J-A24032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH WESLEY | : | No. 1865 EDA 2018 |

Appeal from the Order Entered June 25, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004711-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH WESLEY | : | No. 1866 EDA 2018 |

Appeal from the Order Entered June 22, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004711-2017

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED FEBRUARY 21, 2020**

The Commonwealth appeals from two pre-trial orders that (1) suppressed evidence collected from a cellular telephone ("cell phone") registered to Appellee, Joseph Wesley, but used by his girlfriend, Jennifer Vance; (2) suppressed the cell-site location information ("CSLI") obtained

_____

[*] Retired Senior Judge assigned to the Superior Court.

from a cell phone used by Appellee; (3) precluded the admission of text messages exchanged between Appellee and Vance; and (4) precluded certain prior bad act evidence related to Appellee's sale of firearms and drugs to a cooperating witness, Danielle Miller.[1]  We affirm in part and vacate in part the trial court's determination regarding the prior bad act evidence and reverse the remainder of the trial court's rulings.

On December 2, 2016, Miller and Stephen Rowl were shot while sitting in a vehicle outside Miller's home in Norristown, Pennsylvania.  On May 9, 2017, a criminal complaint was filed charging Appellee with attempted murder of the first degree, solicitation to commit murder of the first degree, conspiracy to commit murder of the first degree, and conspiracy to commit aggravated assault related to this shooting.[2]  In the affidavit of probable cause, it was alleged that Appellee hired Darnelle Bean to murder Miller because Miller was a cooperating witness in a prosecution of Appellee related to an April 15, 2016 transaction in which Appellee sold Miller assault rifles and a June 28, 2016 in which Appellee sold Miller a semi-automatic rifle, a handgun, and cocaine.  On June 15, 2018, following a stipulated bench trial, Appellee was convicted of several offenses related to the June 28, 2016

---

[1] Though the orders at issue do not dispose of the entire case, the Commonwealth certified in its notices of appeal that the orders terminate or substantially handicap its prosecution of Appellee and therefore are appealable as of right.  *See* Pa.R.A.P. 311(d).

[2] 18 Pa.C.S. §§ 901(a), 902(a), and 903(a)(1), respectively.

- 2 -

transaction, including the illegal sale or transfer of firearms and possession with intent to deliver a controlled substance.[3] **Commonwealth v. Wesley**, No. 3084 EDA 2018 (Pa. Super. filed December 12, 2019) (affirming convictions).

The trial court noticed trial to begin in the instant case on June 25, 2018. Prior to trial, the Commonwealth filed a motion *in limine* to admit evidence related to Appellee's prior bad acts related to the firearm and drug sales to Miller. Appellee filed a motion *in limine* to preclude or limit the use of this prior bad act evidence at trial. Appellee also filed a motion *in limine* to preclude the admission of an October 20, 2016 text message conversation between Appellee and Vance obtained from Vance's phone; specifically Appellee requested that the trial court deny the admission of Appellee's text message to Vance:

> I'm over this shit. Don't hate me when there is a dead body in town. That's all I'm saying.

Appellee's Motion *in Limine* to Preclude Text Messages Between Appellee and Vance, 6/18/18, ¶7.

In addition, Appellee filed two suppression motions. In the first, Appellee sought to suppress evidence collected from a cell phone with the

---

[3] 18 Pa.C.S. § 6111(c) and 35 P.S. § 780-113(a)(3), respectively. Appellee was also convicted of offenses related to the April 15, 2016 sale of firearms, but these convictions were *nolle prossed* following trial because the firearms sold on that date did not fall within the illegal sale or transfer of firearms statute. **Commonwealth v. Wesley**, No. 3084 EDA 2018, unpublished memorandum at 3 & n.3 (Pa. Super. filed December 12, 2019).

number 267-638-7499 used by Vance but registered to Appellee ("7499 Phone"); Appellee challenged the seizure on the grounds that the search warrant for the 7499 Phone included in its "items to be searched and seized" the "[e]ntire contents of the phone," including "text messages, emails, phone numbers, call logs," but did not state that the phone itself was to be seized. Appellee's Motion to Suppress Evidence Seized From Vance's Cellular Phone, 6/18/18, ¶¶5-6. In the other suppression motion, Appellee asserted that the Commonwealth obtained CSLI data from four cell phones that he owned or used pursuant to a court order rather than a warrant and that such a warrantless search of his CSLI was unconstitutional.

On June 22, 2018, the trial court held a hearing on the motions *in limine* and suppression motions. At the conclusion of the hearing, the trial court issued its rulings regarding the motions *in limine*. The trial court granted Appellee's motion *in limine* to preclude the admission of the October 20, 2016 text message exchange between Appellee and Vance. Order, 6/25/18; N.T., 6/22/18, at 59-60. With respect to the prior bad act evidence, the trial court ruled that the Commonwealth could only present evidence relating to seven identified topics concerning the general facts of the April and June 2016 purchases of drugs and firearms from Appellee and the ensuing criminal case. Order, 6/25/18; **see also** N.T., 6/22/18, at 57-58. The trial court further ruled that the Commonwealth could not admit into evidence the firearms, photographs of the firearms, the audio or video captured from the incidents, or the transcript of the recorded audio. N.T., 6/22/18, at 58.

At a June 25, 2018 hearing, the trial court granted both of Appellee's suppression motions and announced its findings of facts and conclusions of law. With respect to the search and seizure of the 7499 Phone used by Vance, the court found that Appellee had standing to challenge the seizure and a legitimate expectation of privacy with respect to the phone as a result of the fact that the account information AT&T, the cell phone provider associated with the phone, showed that he was the financially responsible party and the user of the phone. N.T., 6/25/18, at 5-6. The court further found that both the search warrant application and affidavit of probable cause state that officers had already seized the phone and neither of these documents indicates a basis for the seizure. *Id.* at 4-5. As there was no valid warrant for the seizure of the phone and no exception to the search warrant was asserted, the court granted the motion to suppress. *Id.* at 6; *see also* Order, 6/25/18.

With respect to the motion to suppress the CSLI, the trial court recognized that, under the United States Supreme Court's decision of *Carpenter v. United States*, 138 S.Ct. 2206 (2018), issued on the day of the suppression hearing, CSLI was protected by the Fourth Amendment of the United States Constitution. *Id.* at 2217. The trial court concluded that the procedure initially used to obtain CSLI for Appellee's four cell phones in December 2016 – pursuant to orders issued under the federal Stored Communications Act, 18 U.S.C. § 2703(d), and orders under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("Wiretap Act") – did not

pass constitutional muster under **Carpenter**. N.T., 6/25/18, at 9-10. However, the court noted that the Commonwealth had obtained search warrants with respect to three of the four phones in the days prior to the suppression hearing; the court found that the CSLI reports obtained pursuant to the warrants satisfied **Carpenter**. **Id.** at 10. The court therefore denied the suppression motion with respect to the CSLI collected via warrants from these three cell phones, but granted the motion with respect to the information obtained from the fourth cell phone, with the number 267-250-0395 ("0395 Phone"), as to which no warrant was obtained. **Id.** at 10-11; Order, 6/25/18.

On June 25, 2018, the trial court entered written orders memorializing its rulings at the June 22nd and June 25th hearings. The Commonwealth filed timely notices of appeals from the trial court orders.[4]

_____

[4] On June 25, 2018, the Commonwealth filed separate notices of appeal from the trial court's June 22nd oral rulings regarding the motions *in limine* and its June 25th oral rulings regarding the suppression motions. Also on June 25th but subsequent to the entry of the notices of appeal, separate trial court orders were entered on the docket memorializing its earlier rulings, thus complying with Rule of Appellate Procedure 301 pertaining to the requisites for an appealable order. **See** Pa.R.A.P. 301(a)(1), (b) (stating that "no order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court" and that "[e]very order shall be set forth on a separate document"). Although the notices of appeal were filed prior to the entry of the appealable orders, we treat them as timely filed. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

The Commonwealth raises the following issues on appeal:

[I]. Whether the trial court erred in suppressing evidence seized from Jennifer Vance's cell phone, where [Appellee] did not have standing because he had no legitimate expectation of privacy in the phone that was exclusively used by and paid-for-on-a-monthly-basis by Ms. Vance and, in any event, the seizure was proper because law enforcement was permitted to seize and secure the cell phone to prevent the destruction of evidence while they obtained a search warrant for its contents?

[II]. Whether the trial court erred in suppressing the cell phone records, including cell-site location information, for [Appellee's] phone, (267) 250-0395, based on *Carpenter v. United States*, where the search was conducted in full compliance with Pennsylvania's Wiretap Act, and was supported by probable cause?

[III]. Whether the trial court abused its discretion in precluding the Commonwealth from introducing into evidence a text message [Appellee] sent to his girlfriend the day before he solicited a murder, that stated, "don't hate me when there is a dead [body] in town," where the evidence is relevant to establish two material elements of the offenses charged, intent and malice, and is also relevant to establish [Appellee's] motive for the murder and demonstrate the history and natural development of the case?

[IV]. Whether the trial court abused its discretion in limiting the Commonwealth in the prior bad act evidence it could introduce from [Appellee's] case involving the illegal sale of guns and drugs to Ms. Miller, where the evidence was relevant to establish intent and motive, and as part of the history and natural development of the case and thus, the court should have permitted the Commonwealth to demonstrate the strength of its Rule 404(b) exceptions through all available evidence?

---

The Commonwealth filed timely Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal on July 13, 2018, and the trial court issued its Pa.R.A.P. 1925(a) opinion on November 14, 2018. This Court entered an order consolidating the Commonwealth's two appeals on January 25, 2019.

Commonwealth Brief at 9-10 (reordered for ease of disposition; trial court rulings omitted).

*Motion to Suppress – Seizure of 7499 Phone*

Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Duke**, 208 A.3d 465, 469 (Pa. Super. 2019) (citation omitted). We are bound by the facts found by the trial court so long as they are supported by the record. **Id.** at 470. The trial court has sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. **Id.** We are not bound by the trial court's conclusions of law, and our review of questions of law is *de novo*. **Commonwealth v. Fulton**, 179 A.3d 475, 487 (Pa. 2018). Our scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing. **Id.**

The Commonwealth first argues that the trial court's suppression of the evidence from the 7499 Phone was improper because Appellee lacked standing to challenge the suppression and he further lacked a legitimate expectation of privacy in the phone. The Commonwealth asserts that the unequivocal evidence established that Appellee had no possessory interest in

the phone, but rather that the 7499 Phone was seized from Vance, Vance was the exclusive user of the phone, and she paid the phone's monthly bill.[5]

"A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa. Super. 2011). As our Supreme Court has explained, the standing and privacy analyses are separate and distinct:

> While cursorily similar, standing and privacy interests are different concepts serving different functions. Standing is a legal interest that empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment to the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. It ensures that a defendant is asserting a constitutional right of his own. The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment or Article I, § 8 is implicated. In essence, while a defendant's standing dictates when a claim under Article I, § 8 may be brought, his privacy interest controls whether the claim will succeed-once a defendant has shown standing, he must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises.

---

[5] The Commonwealth also argues that, even if Appellee could challenge the seizure of the 7499 Phone, the police acted properly in seizing the phone pursuant to a valid warrant authorizing the search of the phone's contents and that the seizure of the phone was also supported by exigent circumstances related to the potential destruction of evidence and the fact that the phone might provide information on locating Appellee who had fled Pennsylvania after the shooting of Miller. Because we conclude that Appellee had no standing to challenge the seizure of the phone nor a legitimate expectation of privacy in the phone, we do not reach these additional arguments.

**Commonwealth v. Shabezz,** 166 A.3d 278, 286-87 (Pa. 2017) (citations, brackets, and quotation marks omitted).

A defendant must demonstrate one of the following interests to show standing:

> (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises.

**Maldonado**, 14 A.3d at 910 (citation omitted).

An expectation of privacy will be found to exist when the defendant exhibits "an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable." **Commonwealth v. Kane**, 210 A.3d 324, 330 (Pa. Super. 2019). In determining whether the defendant's expectation of privacy is legitimate or reasonable, "we must consider the totality of the circumstances and the determination ultimately rests upon a balancing of the societal interests involved." **Id.** (citation and quotation marks omitted). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." **Id.** (citation omitted).

An individual may still maintain a legitimate expectation of privacy in personal property that is seized outside of his presence

> [s]o long as a person seeks to preserve his effects as private, even if they are accessible to. . . others. Stated differently, a person must maintain the privacy of his *possessions* in such a fashion that

his expectations of freedom from intrusion are recognized as reasonable.

***Commonwealth v. Hawkins***, 718 A.2d 265, 267 n.1 (Pa. 1998) (citation omitted; emphasis in original). However, an individual cannot establish a reasonable expectation of privacy in his effects where he "has meaningfully abdicated his control, ownership or possessory interest." ***Kane***, 210 A.3d at 330 (citation omitted).

> [A]bandonment of a privacy interest is primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

***Id.*** at 330-31 (citations and quotation marks omitted).

At the suppression hearing, the Commonwealth and Appellee stipulated that on December 6, 2016, Vance was served with a search warrant at her place of employment in Norristown, and the police seized the 7499 Phone from her. N.T., 6/22/18, at 8-9. The provider for the 7499 Phone is AT&T, and AT&T's subscriber information identifies Appellee as the billing and financially liable party for that phone. ***Id.*** at 9; Defense Suppression Exhibit 1. In addition, the parties stipulated to the following conversation between Vance and a detective on December 4, 2016:

[Detective:]     Who is your phone provider[?]

[Ms. Vance:] Sprint. Let me think about it. Who's the ball? AT&T. I don't pay attention to it really. I just call the number on the phone and pay the bill. It's pretty easy.

\*\*\*

[Detective:] Does [Appellee] know you're here talking to us today?

[Ms. Vance:] I don't think so. I didn't tell him I was coming because I have no reason to. He's not involved, and I know that because he's not in this town. He's not in this state. He's not in PA.

N.T., 6/22/18, at 10-12. The trial court concluded that Appellee had standing to challenge the seizure of the 7499 Phone and a legitimate expectation of privacy in the phone because he was listed in AT&T account information as the financially liable party and the user of the phone. N.T., 6/25/18, at 5-6; *see also* Trial Court Opinion at 8.

Upon these stipulated facts, the trial court erred in concluding that Appellee had standing or a legitimate expectation of privacy with respect to the 7499 Phone. With respect to standing, it is inarguable that Appellee could not satisfy the first, third, and fourth standing interests as he was not present when the seizure took place at Vance's workplace, he did not have a proprietary or possessory interest in that location, and he was not charged with a possessory offense related to the phone. *Maldonado*, 14 A.3d at 910. Furthermore, Appellee did not have a possessory interest in the phone at the time it was seized. *Id.* While Appellee was listed as the user of the phone and financially liable party in AT&T's records, Appellee was not in possession of the phone when it was seized, and, in fact, he was not in Pennsylvania at

the time of the seizure. No evidence was presented that Appellee had a possessory interest in the phone at the time it was seized or that he was intending to return to Pennsylvania in the future to establish a possessory interest in the phone that would grant him the standing to contest its seizure.

Appellee likewise lacked a legitimate expectation of privacy in the 7499 Phone. The stipulated evidence establishes that Vance possessed and used the phone, and she regularly paid the bill for the phone directly without Appellee's involvement. No evidence was submitted that Appellee had attempted to preserve the privacy of his phone by entrusting it to Vance for safe-keeping. *Hawkins*, 718 A.2d at 267 n.1. Rather, Vance knew that Appellee had left the state at the time of her interactions with the police, and she did not feel compelled to inform him that she was having discussions with police because "[h]e's not involved, and I know that because . . . [h]e's not in this state." N.T., 6/22/18, at 12. Accordingly, by virtue of the fact that Appellee had left the state without the phone and ceased communicating with Vance, Appellee meaningfully abdicated his possession and control of the phone therefore abandoning his constitutionally protected privacy interest. *See Kane*, 210 A.3d at 331 (holding that defendant did not have a reasonable expectation of privacy over cell phone that he intentionally left on and recording in a public restroom).

*Commonwealth v. Benson*, 10 A.3d 1268 (Pa. Super. 2010), relied on by the trial court to support its determination that Appellee had a legitimate expectation of privacy in the 7499 Phone, is inapposite. In that case, police

- 13 -

obtained telephone bills via a warrant issued to the provider for a cell phone that the appellant used, but which was owned and registered to his ex-girlfriend. *Id.* at 1271. This Court concluded that the appellant had no legitimate expectation of privacy in the phone records because he was not the owner of the phone and therefore he "had no legal right to request or control access to the information from the telephone company." *Id.* at 1274. Unlike in **Benson**, authorities here did not attempt to obtain phone bills or records from AT&T but rather seized the phone itself from Vance, who was the sole user of the phone. Just as in **Benson** the defendant did not have a legitimate expectation of privacy in the telephone bills because he was not the owner of the phone, in the present case, Appellee, though the registered owner of the phone with the provider, did not have a legitimate expectation of privacy with respect to the seizure of and collection of evidence from the phone itself when he did not use or possess the phone and there was no evidence that he intended to reassert a possessory interest in the phone in the future.

*Motion to Suppress – Cell-Site Location Information*

The Commonwealth next challenges the trial court's grant of Appellee's motion to suppress the CSLI records obtained from Appellee's 0395 Phone pursuant to the United States Supreme Court's decision in **Carpenter**. The Commonwealth argues that, unlike in **Carpenter**, the order that served as the basis for the retrieval of CSLI for the 0395 Phone was supported by

probable cause and issued pursuant to the procedural requirements of the Pennsylvania Wiretap Act.[6]

Appellee filed a motion to suppress the CSLI obtained from four of his cell phones. The Commonwealth initially acquired CSLI from three of these phones through a Wiretap Act order or grand jury subpoena, but then later applied for search warrants for the CSLI for these three phones just prior to the suppression hearing. With respect to the 0395 Phone, however, the Commonwealth did not seek a search warrant for the CSLI, and therefore it relied solely on its December 9, 2016 order obtained pursuant to the Wiretap Act. N.T., 6/22/19, at 18; Commonwealth Suppression Exhibit 6. The December 9, 2016 order was issued by a judge of the Court of Common Pleas of Montgomery County pursuant to Section 5743 of the Wiretap Act, 18 Pa.C.S. § 5743. Commonwealth Suppression Exhibit 6, Order, 12/9/16, ¶2; *see also id.*, Application at 1. The December 9, 2016 order required Appellee's cell phone provider to disclose CSLI from the 0395 Phone from October 1, 2016 through the date of the issuance of the order, so-called

_____

[6] The Commonwealth also challenges on appeal the trial court's conclusion in its Rule 1925(a) opinion that the CSLI from the 0395 Phone should be suppressed on the separate basis that the probable cause affidavit in support of the December 9, 2016 order cites to text messages obtained from the 7499 Phone unconstitutionally seized from Vance. Trial Court Opinion at 11-12. As we have reversed the trial court's ruling regarding the suppression of the 7499 Phone, *see supra*, there was no infringement on Appellee's constitutional rights based on the Commonwealth's citation to the messages extracted from the 7499 Phone in its application for the order for the CSLI data for the 0395 Phone.

"historical CSLI," and also authorized the relevant authorities to actively monitor Appellee's global positioning for up to 30 days from the date of the order, referred to as "real-time CSLI."[7] *Id.*, ¶¶3-5, 8.

The trial court denied the suppression motion as to the CSLI data from Appellee's three cell phones for which the Commonwealth obtained a search warrant. N.T., 6/25/18, at 10. However, the trial court granted the motion with respect to the CSLI gathered from the 0395 Phone, finding that the December 9, 2016 order did not comply with *Carpenter*. N.T., 6/25/18, at 9-10; Trial Court Opinion at 12. Specifically, the trial court rejected the Commonwealth's contention that the December 9, 2016 order was the functional equivalent of a search warrant, stating that CSLI obtained pursuant to an order violates "the plain language of *Carpenter*, [which] mandates the use of a search warrant to acquire CSLI data." Trial Court Opinion at 12.

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017) (citation omitted). "Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause." *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010). "Probable cause exists where the facts and

---

[7] *Commonwealth v. Pacheco*, ___ A.3d ___, 2020 PA Super 14, *2-4 & n.3 (filed January 24, 2020) (describing the procedure and technology associated with the collection of historical and real-time CSLI).

circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Id.* (citation omitted). The task of the issuing authority in issuing a warrant is to "to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Harlan*, 208 A.3d 497, 505 (Pa. Super. 2019) (citation omitted).

In *Carpenter*, federal prosecutors applied for and obtained orders for the disclosure of a four-month period of historical CSLI data pertaining to Carpenter pursuant to the Stored Communications Act; that statute permits the government "to compel the disclosure of certain telecommunications records when it 'offers specific and articulable facts showing that there are reasonable grounds to believe' that the records sought 'are relevant and material to an ongoing criminal investigation.'" 138 S.Ct. at 2212 (quoting 18 U.S.C. § 2703(d)). Following Carpenter's conviction, he appealed challenging the trial court's refusal to suppress the CSLI because it had been obtained without a warrant supported by probable cause. *Id.* at 2212-13.

The Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," noting that "when the [g]overnment tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle

monitor to the phone's user." **Id.** at 2217-18. The Court rejected the government's contention that Carpenter's privacy interest was not implicated because the CSLI was obtained from a third-party, the cell-phone provider, rather than the cell-phone user directly because the location information was "not truly 'shared' [with a third party] as one normally understands the term." **Id.** at 2220. The Court therefore held that "the acquisition of [Carpenter's historical CSLI] was a search within the meaning of the Fourth Amendment," yet reserved the issue of whether the acquisition of other location information from a cell-phone provider, such as real-time CSLI data, is also protected under the Fourth Amendment. **Id.**

Having concluded that a search occurred, the Supreme Court held that "the Government must generally obtain a warrant supported by probable cause before acquiring [CSLI]," except where circumstances exist that would allow a warrantless search to proceed through one of the recognized exceptions to the warrant requirement. **Id.** at 2221-23. Turning back to the facts of the case before it, the Court concluded that the "reasonable grounds" standard required for an order under the Stored Communications Act fell "well short of the probable cause required for a warrant." **Id.** at 2221 (quoting 18 U.S.C. § 2703(d)). The Court noted that the Stored Communications Act allowed the government to compel the production of CSLI records simply upon the government's representation that the data was pertinent to an ongoing investigation, a "gigantic departure" from the probable cause standard necessary for a warrant that requires "some quantum of individualized

suspicion before a search or seizure may take place." *Id.* (citation and quotation marks omitted).

Following *Carpenter*, this Court decided *Commonwealth v. Pacheco*, ___ A.3d ___, 2020 PA Super 14 (filed January 24, 2020). In *Pacheco*, authorities were investigating Pacheco related to the interstate transport of drugs and obtained orders pursuant to Subchapter E of the Wiretap Act, 18 Pa.C.S. §§ 5771-5775, requiring Pacheco's cell phone provider to turn over to authorities his real-time CSLI. *Pacheco*, 2020 PA Super 14, *2. Based on their monitoring of the CSLI, authorities were able to track Pacheco transporting drugs from Georgia to New York through Pennsylvania and they ultimately apprehended him during one of these trips. *Id.* at *4-5. Pacheco's motion to suppress the CSLI evidence was denied, and he was convicted of various charges. *Id.* at *5-6.

Pacheco appealed, arguing, *inter alia*, that the trial court erred in not suppressing the warrantless tracking of his real-time CSLI in light of *Carpenter*, which was decided after his conviction. We first held that, while the High Court did not reach the issue of whether an individual has a legitimate expectation of privacy of real-time CSLI, there was no meaningful distinction between the privacy interests as to historical and real-time CSLI and therefore the authorities conducted a "search" of Pacheco when they accessed his real-time CSLI. *Id.* at *17-19. Having concluded that a search occurred, we turned to the question of whether the Wiretap Act orders used to determine Pacheco's location satisfied the warrant requirement of the Fourth

Amendment. *Id.* at *20. In analyzing this issue, we looked to the test set forth in *Dalia v. United States*, 441 U.S. 238 (1979), which held that an order issued under the federal wiretap act can satisfy the Fourth Amendment warrant requirement so long as three factors are satisfied: (1) the order was issued by a neutral and disinterested magistrate; (2) the applicant for the order demonstrated to the magistrate "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) the order "particularly describe[d] the things to be seized, as well as the place to be searched." *Pacheco*, 2020 PA Super 14, *21-22 (quoting *Dalia*, 441 U.S. at 255) (quotation marks omitted).

Applying the *Dalia* test to the facts of *Pacheco*, we concluded that the real-time CSLI orders satisfied each of the three requirements. *Id.* at *22-24. First, we observed that the orders were issued by a neutral and disinterested magistrate, namely a judge of the court of common pleas, who was authorized by the Wiretap Act to issue such orders. *Id.* at *23. Second, the orders specifically stated that the issuing court found "probable cause" that the real-time CSLI would aid in the apprehension of Pacheco related to drug offenses, and this probable cause determination was grounded upon a detailed affidavit of probable cause submitted to the court setting forth the status of the investigation of Pacheco. *Id.* at *23-25. Finally, we noted that the orders described with particularity the place to be searched, Pachecho's cell phone, and the item to be seized, his real-time CSLI data. *Id.* at *24. We therefore determined that the orders for the collection of Pacheco's real-

time CSLI were warrants for the purposes of the Fourth Amendment analysis and the search conducted of his CSLI was constitutional. ***Id.*** at \*24, 26.

Presently, there is no question that, under ***Carpenter*** and ***Pacheco***, the government's efforts to obtain over two months of historical CSLI and up to 30 days of real-time CSLI from Appellee's 0395 Phone constituted a search within the meaning of the Fourth Amendment. ***Carpenter***, 138 S.Ct. at 2220; ***Pacheco***, 2020 PA Super 14, \*17-19. Applying the three-part test set forth in ***Dalia***, however, we conclude that, as in Pacheco, the December 9, 2016 order used to access the historical and real-time CSLI from the 0395 Phone was a warrant for the purpose of the Fourth Amendment. First, the December 9, 2016 order was issued by a neutral and disinterested magistrate, namely a judge of the Court of Common Pleas of Montgomery County who was authorized under the Wiretap Act to issue the order. ***See*** 18 Pa.C.S. §§ 5702, 5743(c)(2)(iii), (d).

Second, the judge issuing the warrant found that there was "probable cause to believe that the records or other information" related to the 0395 Phone are "relevant and material to a criminal investigation of [Appellee] relating to violations of the Crimes Code," including the possession with intent to deliver a controlled substance suspected as being conducted by Appellee from the 0395 Phone. Commonwealth Suppression Exhibit 6, Order, 12/9/16, ¶1. The application for the order was supported by a 22-page affidavit sworn to by a detective in the Montgomery County Detective Bureau, containing a detailed explanation of the status of the investigation of Appellee for his

firearm and drug sales to Miller. The detective explained that an arrest warrant had been issued for Appellee in that other case but that Appellee had taken steps to evade apprehension, Appellee was believed to be actively using the 0395 Phone, and that the ability to access the CSLI data from the 0395 Phone could aid in his apprehension. Commonwealth Suppression Exhibit 6, Affidavit, 12/9/16, at 18-21; **see also** N.T., 6/22/18, at 28.

Third, the December 9, 2016 order "particularly describe[d] the things to be seized, as well as the place to be searched." **Pacheco**, 2020 PA Super 14, *22 (quoting **Dalia**, 441 U.S. at 255) (quotation marks omitted). The order stated that the place to be searched was "the records or other information provided by AT&T" for the 0395 Phone. Commonwealth Suppression Exhibit 6, Order, 12/9/16, ¶1 (emphasis omitted). The order also clearly identified the items to be seized: the historical CSLI for the two months prior to the date of the order and real-time CSLI for the next 30 days as requested.

The December 9, 2016 order authorizing the seizure of the CSLI data for the 0395 Phone was issued pursuant to Section 5743 of the Wiretap Act, which requires that an officer demonstrate "specific and articulable facts" showing that there are "reasonable grounds to believe" that the requested material was "relevant and material to an ongoing criminal investigation." 18

Pa.C.S. § 5743(d).[8] While this provision does not require that the applicant submit an affidavit or that the judge make its determination as to the issuance of the order on a probable cause standard, the December 9, 2016 order at issue here was in fact based upon a finding of probable cause supported by a sworn affidavit providing a detailed recitation of the investigation of Appellee to date. Furthermore, the issuing judge did not merely make a determination that the CSLI records would be relevant to an ongoing investigation, but rather that the records were relevant to Appellee's criminal behavior, therefore satisfying the requirement that there be "some quantum of individualized

---

[8] This section provides:

> **(c) Records concerning electronic communication service or remote computing service.--**
>
> . . .
>
> (2) A provider of electronic communication service or remote computing service shall disclose a record or other information pertaining to a subscriber to or customer of the service . . . to an investigative or law enforcement officer only when the investigative or law enforcement officer:
>
> . . .
>
> (iii) obtains a court order for the disclosure under subsection (d); or
>
> . . .
>
> **(d) Requirements for court order.--**A court order for disclosure under subsection (b) or (c) shall be issued only if the investigative or law enforcement officer shows that there are specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

18 Pa.C.S. § 5743(c)(2)(iii), (d).

suspicion" prior to the search taking place. **Carpenter**, 138 S.Ct. at 2221 (citation omitted). As this Court explained in **Pacheco**, the relevant factors in determining whether an order is a warrant for the purpose a Fourth Amendment analysis are those set forth in **Dalia**, and the "nomenclature" used to describe the level of suspicion in the underlying statute authorizing the search is "irrelevant" to this analysis. 2019 PA Super 14, \*24 n.17; **see also Commonwealth v. Burgos**, 64 A.3d 641, 652-56 (Pa. Super. 2013) (holding that an order authorizing the placement of a global positioning system tracking device was the "functional equivalent of [a] traditional search warrant" where the issuing judge made a finding that probable cause existed even though the authorizing statute only required that the order be premised upon a finding of "reasonable suspicion").

Accordingly, we conclude pursuant to **Pacheco** and **Dalia** that the December 9, 2016 order was a warrant under the Fourth Amendment. As the search of the CSLI records related to the 0395 Phone was supported by a warrant, there was no violation of **Carpenter**. Therefore, we reverse the trial court's order suppressing the CSLI from the 0395 Phone based upon the absence of a search warrant.[9]

---

[9] We note that Appellee sought suppression of the CSLI from the 0395 Phone solely on the basis that the Commonwealth did not obtain a warrant, and he did not raise the merits of the probable cause determination or whether the Commonwealth complied with the proper procedure under the Wiretap Act for obtaining this material.

*Motion in Limine – October 20, 2016 Text Messages*

In its third issue, the Commonwealth contends that the trial court abused its discretion in precluding the admission of October 20, 2016 text messages extracted from the 7499 Phone because the messages – particularly Appellee's statement "[d]on't hate me when there is a dead body in town" – were relevant to show his specific intent to kill Miller, his motive in wanting Miller killed, and as *res gestae* evidence to explain the complete story of Appellee's criminal acts. In reviewing a trial court's evidentiary ruling, we are guided by the following standard:

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citations omitted). "Evidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case." ***Commonwealth v. Gad***, 190 A.3d 600, 605 (Pa. Super. 2018) (citation omitted). Further, "[a] trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration." ***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa. Super. 2019) (citation omitted). The trial court will be found to have abused its

discretion where its "judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Lekka***, 210 A.3d 343, 354 (Pa. Super. 2019) (citation omitted).

As the trial court accounts in its Rule 1925(a) opinion, Appellee's "dead body" comment in his text was precipitated by a conversation that took place earlier on October 20, 2016 between Vance and Ronald Knight, who was the father of one of Miller's children. Trial Court Opinion at 13-14. This conversation took place as follows:

KNIGHT:    Well I kno why [Appellee] chose to ignore me

VANCE:     Y?

***

KNIGHT:    I talked to her today

VANCE:     And ..

VANCE:     i'm at work can we not beat around the bush?  I been real with u I exact the same bruh

KNIGHT:    She act like shit is sweet

KNIGHT:    She said [Appellee] retarded

KNIGHT:    **They was fuckin**

VANCE:     Duh [Ronald]

KNIGHT:    Why would he think I gave a fuck

VANCE:     That's all?

VANCE:     I thought it was something major [laughing emoji]

KNIGHT:    **She don't think she got testify**

KNIGHT:    And that story she made up was [a] lie

    \*\*\*

VANCE:    What story?

KNIGHT:    I kno that bitch got somthin

VANCE:    [Appellee] do

    \*\*\*

VANCE:    **Oh yeah she just lined him up we kno that**

KNIGHT:    **All the shits sealed till [Appellee] get convicted**

Commonwealth's Response to Appellee's Motion *In Limine*, 6/21/18, Exhibit A, at 4 (emphasis added).

Immediately after this conversation between Vance and Knight, Vance texted Appellee and began the following exchange:

VANCE:    Ur [a] dirty bastard I hope you rot dickhead

    \*\*\*

VANCE:    U fucked that bitch n I got proof

VANCE:    Ur dead to me bruh

    \*\*\*

APPELLEE:  Listen.  I'm not sure what she's showing u

APPELLEE:  Don't be dumb .. At this point she would do and say anything.

APPELLEE:  Just call me

VANCE:    **Facing 5yrs cause u couldn't keep ya dick in ya pants** smh

    \*\*\*

VANCE:    U really are a dirtball yo.  I swear I fucking hate u

VANCE:    U a clown these kids tryna say Gn

VANCE:    U kno since u can't say it in person cause u ducked our life up

VANCE: Fucked

APPELLEE: Y'all wasn't thinking about me earlier...

APPELLEE: **I'm over this shit.  Don't hate me when there is a dead body in town.  That's all I'm saying.**

APPELLEE: I'm done wit the games[.]  My life is on the line and I can't afford the games and sensitive bullshit

VANCE: Actually they were u were asked about..  U don't b worried about us like ur life is the only one affected by ur actions! Wrong we are all suffering from ur dumbass mistake cause u wanted to be spiteful n fuck that bitch . . .

***Id.*** at 1, 3-4.

The trial court granted Appellee's motion in limine to exclude this text message conversation, explaining that it is "challenging to decipher the context of the conversation between [Appellant] and Ms. Vance" and that, at most, the exchange "appears to be a 'lover's quarrel' which does not have anything to do with the issues in this case."  Trial Court Opinion at 17.  The trial court concluded that admitting the text messages "would require the jury to make a sizeable leap as to the meaning of the messages, which is not permitted."  ***Id.***  Further, the court stated the messages have the potential to unfairly prejudice Appellee by inflaming the jury and diverting its attention from the legal propositions at issue in this case.  ***Id.***[10]

_____

[10] The trial court additionally stated in its opinion that the October 20, 2016 text message should be suppressed as fruit of the poisonous tree because the court had also suppressed the seizure of the 7499 Phone used by Vance from which the text messages were extracted.  Trial Court Opinion at 15.  In addition, the court held that to the extent that the Commonwealth could introduce these messages through its search warrant issued as to Appellee's cell phone with the number 610-389-6001, the messages between Appellee

We hold that the trial court abused its discretion in precluding the admission of the October 20, 2016 text messages. Initially, it is crucial to read these messages with the understanding that one week prior, on October 13, 2016, an arrest warrant was issued for Appellee related to the firearms and drugs case, alerting him to the fact that Miller was cooperating with authorities. Commonwealth's Response to Appellee's Motion *In Limine*, 6/21/18, ¶4; Criminal Complaint, Affidavit of Probable Cause, 5/9/17, at 18-19. The following day law enforcement personnel conducted a search of Appellee's and Vance's residence. Criminal Complaint, Affidavit of Probable Cause, 5/9/17, at 19. In addition, the Commonwealth has alleged that Appellee hired Darnelle Bean to kill Miller on October 21, 2016, the day following Appellee's text to Vance "[d]on't hate me when there is a dead body in town," and that Bean began his surveillance of Miller on that same day. Commonwealth's Response to Appellee's Motion *In Limine*, 6/21/18, ¶9; Criminal Complaint, Affidavit of Probable Cause, 5/9/17, at 16, 19.

Moreover, contrary to the trial court's conclusion, there were numerous indicia in the October 20, 2016 text messages that Miller was the woman referenced in the conversations between Appellee and Vance and Vance and

_____

and Vance at issue here were referenced in the search warrant application for Appellee's phone and therefore the search of the 610-389-6001 phone cannot be an independent source for the messages at issue here. *Id.* at 16. As discussed **supra**, we hold here that the trial court erred in suppressing the seizure of the 7499 Phone. Therefore, the messages extracted from that phone were not fruit of the poisonous tree and should not be suppressed.

Knight. First, Miller was mentioned twice by her first name in text messages exchanged between Vance and Knight on October 20, 2016, including Knight's message to Vance "Danielle has no idea we talk," to which Vance responded "I ain't tell her." Commonwealth's Response to Appellee's Motion *In Limine*, 6/21/18, Exhibit A, at 2. After Knight informed Vance that "[t]hey was fuckin," Knight then said that "[s]he don't think she got testify" and "that story she made up was [a] lie" in an apparent reference to Miller's cooperation with authorities and her potential testimony against Appellee in the drugs and firearms case. *Id.* at 4. After Vance stated that she had proof that Appellee had sex with another woman, Appellee responded that "[a]t this point she would do and say anything," which seemingly relates to Miller's cooperation with the police. Vance then informed Appellee that he would be "[f]acing 5yrs" – likely referring to a potential prison sentence Appellee could receive in the firearms and drugs case – because he "couldn't keep [his] dick in [his] pants." *Id.* at 3. Appellee then informed Vance that he was "over this shit" and not to "hate [him] when there is a dead body in town," and he appeared to confirm that his legal and relationship issues were intertwined by stating that "[m]y life is on the line and I can't afford the games and sensitive bullshit." *Id.* at 2. In sum, the trial court did not conduct a sufficiently thorough review of the entire context of the October 20th text messages and therefore its determination that the jury could only conclude that Miller was the subject of the text messages through an impermissible "sizeable leap" was manifestly unreasonable. Trial Court Opinion at 17.

The trial court did not proceed to analyze whether the October 20, 2016 text messages were relevant to the Commonwealth's case against Appellee; however, it is readily apparent that the messages are relevant to the essential elements of the offenses for which Appellee stands trial. Appellee was charged with attempted murder of the first degree and conspiracy to commit murder of the first degree, and each of these offenses require proof that Appellee had the specific intent to kill Miller. *See Commonwealth v. Ligon*, 206 A.3d 515, 521 (Pa. Super. 2019) (offense of attempted murder of the first degree requires a *mens rea* of a specific intent to kill); *Commonwealth v. McClelland*, 204 A.3d 436, 444-45 (Pa. Super. 2019) (conspiracy to commit murder of the first degree requires proof that the accused shared the specific intent to kill the subject of the conspiracy). In order to prove the specific intent to kill, it must be shown that the defendant acted with premeditation and deliberation, which "exist whenever the assailant possesses the conscious purpose to bring about a death." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015). The specific intent to kill may be established through circumstantial evidence. *Ligon*, 206 A.3d at 519. Appellee's text message to Vance "[d]on't hate me when there is a dead body in town" following a discussion of his apparent intimate relationship with Miller and the revelation that Miller was cooperating in his prosecution was circumstantial evidence that would tend to establish the material fact that Appellee had formed the conscious purpose to bring about Miller's death. *See Commonwealth v.*

*Tedford*, 960 A.2d 1, 42 (Pa. 2008) ("Evidence to prove motive, intent, plan, design, ill will, or malice is always relevant in criminal cases.").

In addition, the text messages are relevant to Appellee's motive to kill Miller and the *res gestae* or the chain or sequence of events underlying the crimes. **See Tedford**, 960 A.2d at 42; **Commonwealth v. Green**, 76 A.3d 575, 584 (Pa. Super. 2013) ("res gestae" evidence showing "the complete story" or "the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts" may be relevant and admissible in a criminal case (citation omitted)). With respect to motive, the messages could be viewed by the jury as showing Appellee's desire to have Miller killed because her cooperation with authorities had already imperiled Appellee's liberty and now his problems were compounded by Vance's discovery of his apparent dalliance with Miller. The text messages are also an essential event in the complete story of the Commonwealth's case, beginning with Appellee's discovery on October 13th that he was being charged related to his sales of firearms and drugs to Miller based on her cooperation, the October 20th discovery by Vance of Appellee's affair with Miller, and culminating in Appellee's October 21st decision to hire Bean to kill Miller.

Finally, we cannot agree with the trial court's conclusion that the October 20th text messages would unfairly prejudice Appellee, which determination appears to have been based solely on the court's mistaken conclusion that it was impossible for the jury to conclude that Miller was the

subject of the text messages. Trial Court Opinion at 17. While the admission of the text messages – particularly Appellee's "[d]on't hate me when there is a dead body in town" message – would undoubtedly be prejudicial to Appellee, the mere fact that they were harmful to Appellee would not justify their exclusion "[b]ecause all relevant Commonwealth evidence is meant to prejudice a defendant." **Danzey**, 210 A.3d at 342 (citation omitted); **see also Gad**, 190 A.3d at 605. As described above, the October 20th text messages were highly probative of Appellee's motive and specific intent to kill Miller and were an essential element in the natural sequence of events of the alleged criminal conduct. Furthermore, the admission of the messages would not inflame the jury to make its decision on legal propositions that are extraneous to this case. **Gad**, 190 A.3d at 605. Accordingly, the trial court's ruling excluding the admission of the October 20, 2016 text message extracted from Vance's 7499 Phone constituted an abuse of discretion and must be reversed.

*Motion in Limine – Prior Bad Acts Evidence*

In its final issue, the Commonwealth argues that the trial court abused its discretion by limiting the admission of prior bad act evidence under Rule of Evidence 404(b) related to Miller's two controlled purchase of firearms and drugs from Appellee that occurred on April 15, 2016 and June 28, 2016. It is undisputed that Appellee's April and June 2016 transactions are relevant to the present case. As the trial court stated in its opinion, these transactions were relevant to help understand the complete story of Appellee's alleged

crimes and his potential motive for hiring someone to kill Miller. Trial Court Opinion at 22. However, the court concluded that the admission of **all** the potential evidence related to those prior crimes would be overkill and tantamount to retrying him in that other case. *Id.*; N.T., 6/22/18, at 58. The trial court thus authorized the Commonwealth to admit the following facts:

1. [Miller] was arrested for selling heroin.

2. Miller advised that she knew someone that she could purchase firearms from.

3. Miller agreed to be a confidential informant, and at the request of authorities, wear a wire, and on 2 occasions purchased firearms from [Appellee] and on 1 occasion purchased cocaine.

4. On April 15, 2016, wearing a wire, Miller met with [Appellee] and he sold her 2 assault rifles, each with magazines containing ammunition.

5. On June 28, 2016, wearing a wire, Miller met with [Appellee] and he sold her cocaine, a semi-automatic pistol and a semi-automatic rifle.

6. On October 13, 2016 an arrest warrant was issued for [Appellee].

7. Miller was not charged with the sale of the heroin.

Order, 6/25/18; **see also** N.T., 6/22/18, at 57-58. The court concluded that the admission of demonstrative evidence pertaining to the transactions, including the assault rifles, handgun, drugs, or photographs of this contraband would add nothing to the jury's analysis, had dubious probative value, and its relevance would be outweighed by its potential for unfair prejudice. Trial Court Opinion at 22. Similarly, the court concluded that the video and audio recordings and the transcripts of the audio recordings were overly prejudicial,

confusing to the jury, and only cumulative of the evidence that the court had already authorized. *Id.* at 22-23.

The Commonwealth contends that the trial court improperly limited the prior bad act evidence because once the court rules that the prior bad act evidence is relevant, the Commonwealth "must be given the opportunity to demonstrate the strength" of the Rule 404(b)(2) exception "through all available evidence." *Commonwealth v. Flamer*, 53 A.3d 82, 88 (Pa. Super. 2012). Thus, the Commonwealth argues that all evidence related to the April and June 2016 firearm and drug sales should be permitted, including the firearms that Miller purchased from Appellee (or photographs thereof) and the audio and video recordings of the transactions. Most particularly, the Commonwealth urges this Court to allow into evidence the audio transcript from the second transaction, which sets forth the following conversation between Appellee and Miller regarding a firearm Appellee was carrying:

MILLER: What is that?

APPELLEE: It's a 40 . . .

MILLER: You're walking around with a 40?

APPELLEE: Yea.

MILLER: Why?

APPELLEE: Cause if I hit ya, I want it to kill.

Appellee's Motion *in Limine* to Preclude and/or Limit Prior Bad Act Evidence, 6/18/18, ¶8.

Rule 404(b) provides as follows:

(b) Crimes, Wrongs or Other Acts.

*(1) Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).  This Court has explained that:

In accordance with Rule 404(b)(1), evidence of prior bad acts or criminal activity unrelated to the crimes at issue is generally inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity.  However, it is well settled that evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.  In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Conte***, 198 A.3d 1169, 1180 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Rule 403 additionally vests the trial court with authority to determine the admissibility of the evidence with an eye towards the "clear, concise, and expeditious presentation, allowing for the exclusion of evidence that is confusing, cumulative, or unfairly prejudicial."  ***Farese v. Robinson***, ___ A.3d ___, 2019 PA Super 336, *19 (filed Nov. 8, 2019).  This rule provides:

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

In ***Commonwealth v. Hicks***, 91 A.3d 47 (Pa. 2014), our Supreme Court reviewed the interplay between Rule 403 and Rule 404(b), specifically, the ability of a trial court to make pre-trial determinations regarding the admissibility of evidence under Rule 403 concerning prior bad act evidence that is otherwise deemed admissible under Rule 404(b)(2). In ***Hicks***, the defendant was charged with murdering a prostitute, and the Commonwealth gave pre-trial notice that it intended to introduce the testimony of seven witnesses who would testify regarding incidents in the past where the defendant hurt other prostitutes. *Id.* at 49-50. The trial court ruled that the witnesses' testimony was relevant to a "common scheme" under Rule 404(b)(2), but concluded that only three of the witnesses would be permitted to testify while the court excluded the other four witnesses as cumulative evidence under Rule 403. *Id.* at 50. Our Supreme Court reversed, holding that the trial court erred in applying the balancing test of Rule 403 at the same time as its pre-trial determination regarding whether the evidence was admissible under Rule 404(b) and that the application of Rule 403 should properly have been deferred until trial. *Id.* at 54-55. The Court stated that the grounds for exclusion of evidence under Rule 403 are "generally not susceptible to pre-trial evaluation" because "[i]nherent in the rule is the assumption that the court has an adequate record, one that will mirror or provide great insight into what will develop at trial." *Id.* at 53.

While the Supreme Court in **Hicks** found that the trial court improperly concluded that four of the Commonwealth's proposed witnesses were cumulative in advance of trial, the Court noted that trial courts were not entirely excluded from applying Rule 403 to evidence in advance of trial:

> Although we hold the balancing of probative value and prejudice is normally better left for trial, we do not intend to preclude all such pre-trial determinations. A court may properly exclude—pre-trial—evidence under the balancing test that, while relevant, carries an unusually high likelihood of causing unfair prejudice and minimal probative value regardless of the evidence ultimately presented at trial. There may also be cases where the pre-trial record is sufficiently developed and the evidence to be presented is sufficiently certain to allow the trial court to intelligently and accurately balance the interests involved. However, these scenarios are exceptions rather than the rule and, as this case demonstrates, are exceedingly unlikely to apply to assessments of the cumulative nature of potential testimony[.]

**Id.** at 54.

In the instant case, the trial court conducted a bench trial concerning Appellee's charges related to the April and June 2016 firearm and drug sales within ten days prior to its ruling on the motions *in limine*. Therefore, the trial court was well-acquainted with the evidence that the Commonwealth sought permission to introduce in the present case against Appellee – the firearms Appellee sold to Miller and audio and video recordings of the sales. Therefore, the present matter is one of those types of cases the **Hicks** Court identified "where the pre-trial record is sufficiently developed and the evidence to be presented is sufficiently certain to allow the trial court to intelligently and accurately balance the interests involved." **Id.** at 54. The trial court was

therefore well within its authority in concluding that introduction of the assault rifles and handgun that Appellee sold Miller, or photographs thereof, had minimal probative value to the present trial because none of these firearms were used against Miller and the introduction of the firearms would be highly prejudicial to Appellee. *Id.* Similarly, the trial court correctly concluded that Appellee's statement to Miller that he carried a "40...[c]ause if I hit ya, I want it to kill" had little to no relevance to the instant prosecution of Appellee and would be highly prejudicial to Appellee because it would be more indicative of Appellee's violent character. While the Commonwealth now maintains that Appellee's statement is indicative of Appellee's specific intent to kill Miller, this position is inconsistent with the Commonwealth's theory that Appellee developed his motive and intent to kill as a result of his discovery that Miller was cooperating with authorities when the October 13, 2016 arrest warrant was issued and again on October 20, 2016 when Vance accused Appellee of having sexual relations with Miller.[11] Furthermore, there is no allegation in this case that the "40" Appellee and Miller were discussing was the actual weapon that was used against Miller.

---

[11] To the extent the Commonwealth is able to articulate a plausible theory that Appellee's statement about the "40" related to his specific intent to kill Miller, we note that the trial court is free to reconsider its decision to exclude this evidence during trial. *Hicks*, 91 A.3d at 54 ("A pre-trial ruling on admissibility may help define the issues and the potential evidence, but the court retains the discretion to modify its ruling as circumstances develop or as the evidence at trial diverges from that which was anticipated.").

However, in accordance with **Hicks**, we must conclude that the remainder of the trial court's rulings restricting the Commonwealth's presentation of its prior bad acts evidence, which relied on the trial court's assessment that the Commonwealth's presentation would be "overkill," are premature. As the Court in **Hicks** explained, it is "exceedingly unlikely" that a trial court would have a sufficient record prior to trial upon which it could make the *ex ante* Rule 403 determination that relevant bad acts evidence that the Commonwealth would seek to present at trial is cumulative. **Id.** at 54. Accordingly, we vacate the trial court's ruling confining the Commonwealth's presentation regarding the prior bad acts to seven identified topics relating to the April and June 2016 transactions and the resulting criminal case. This overly restrictive ruling violated the "fundamental precept of our criminal jurisprudence that the Commonwealth is entitled to prove its case by relevant evidence of its choosing." **Id.** at 55. Furthermore, we vacate the trial court's blanket prohibition on the introduction of the audio and video recordings of the transactions or the use of transcripts. We stress that this Court takes no position on the merits of these rulings at the present time, and our holding here does not diminish the trial court's authority, indeed its responsibility, to weigh the Commonwealth's evidence regarding Appellee's prior bad acts under Rule 403 at the time the evidence is to be presented at trial.

\* \* \*

Accordingly, we affirm the trial court's ruling regarding the prior bad acts evidence to the extent the court ruled that the firearms, photographs of

the firearms, and the portion of the transcript of the audio recording of the June 28, 2016 transaction in which Appellee references his "40." We vacate the remainder of the trial court's ruling on the bad acts evidence as premature. With respect to the October 20, 2016 text messages, we reverse the trial court's grant of Appellee's motion *in limine* precluding the admission of these messages. In addition, we reverse the trial court's ruling on Appellee's motion to suppress the CSLI evidence gathered from his four cell phones to the extent the trial part granted the motion with respect to the CSLI from the 0395 Phone. We reverse the trial court's grant of Appellee's motion to suppress the evidence collected from the 7499 Phone.

Orders vacated in part, reversed in part, and affirmed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/20