J-A19043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM COLON | : | |
| | : | |
| Appellant | : | No. 375 EDA 2020 |

Appeal from the PCRA Order Entered January 17, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0015317-2013

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED OCTOBER 23, 2020**

William Colon (Appellant) appeals from the order entered in the Philadelphia Court of Common Pleas dismissing his first, timely petition filed under the Post Conviction Relief Act[1] (PCRA). Appellant brings several claims sounding in alleged ineffectiveness of trial counsel. We affirm.

The PCRA court condensed the underlying facts of the case as follows:

Abba Abukanan was a drug addict. A couple of days prior to October 25, 2012, Abukanan went to the area of 5th and Cornwall Streets in Philadelphia to purchase illegal drugs [from Appellant and Jimmy Santos[2]] using fake money[. Appellant and Santos] did not appreciate that Abukanan was attempting to pawn off fake money to them and an altercation ensued. [Appellant] and Santos chased Abukanan off the block and told him not to come back.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] A set of the notes of testimony from Appellant's trial list a "Jimmy Colon" on the cover; this is a typographical error.

> Abukanan . . . returned on October 25, 2012, money in hand to buy more illicit drugs[. W]hen he was recognized, [Appellant and Santos] were alerted to his presence. Jimmy Santos shot Abukanan in the left wrist and leg. [Appellant] then shot Abukanan in the back of the head, executing him. When police arrived on the scene, Abukanan was found dead, with three gunshot wounds and the money still gripped in his hand.

*Commonwealth v. Colon*, 1701 EDA 2015 (unpub. memo at 2) (Pa. Super. Jan. 10, 2017), *quoting* Trial Ct. Op., 7/29/15, at 3–4 (references to notes of testimony omitted).

Following a joint jury trial, from January 7 to January 15, 2015, against both Appellant and Santos, Appellant was convicted of first-degree murder, violations of the Uniform Firearms Act (VUFA), and possessing the instrument of a crime (PIC).[3] He was sentenced to life in prison without parole for his first-degree murder conviction and concurrent sentences of five to ten years and three and one-half to seven years for his VUFA and PIC convictions.[4]

This Court affirmed his judgment of sentence by a vote of two to one. *Colon*, 1701 EDA 2015 (Pa. Super. Jan. 10, 2017). The concurring and dissenting judge agreed that Appellant's challenges to the sufficiency and weight of the evidence were meritless, and that mistrial motions arising from

---

[3] 18 Pa.C.S. §§ 2502(a), 6101 *et seq.*, and 907, respectively.

[4] Codefendant Jimmy Santos was convicted of third-degree murder, 18 Pa.C.S. § 2502(c), as well as VUFA and PIC. His judgment of sentence was affirmed on direct appeal, *Commonwealth v. Santos*, 2503 EDA 2015 (Pa. Super. Sept. 19, 2016), and his PCRA appeal is currently pending at 1037 EDA 2020.

alleged impermissible bolstering and unsworn hearsay from the prosecutor were rightly denied, but would have granted a new trial based on a mistrial motion arising from the prosecutor's declaration, during Appellant's alibi testimony, that Appellant did not identify the second shooter because he **was** the second shooter. Concurring and Dissenting Memorandum, at 1-4. Likewise, that judge would have granted a new trial based on the trial court's jury instruction as to Appellant's alibi evidence. *Id.* at 4-6. Allocatur was denied, **Commonwealth v. Colon**, 39 EAL 2017 (Pa. June 7, 2017) (table), as was *certiorari*, **Colon v. Pennsylvania**, 138 S.Ct. 686 (Jan. 8, 2018).

Appellant filed a *pro se* PCRA petition, his first, on January 17, 2018, fewer than ten days after his *certiorari* petition was denied. Thus, it is very clearly a timely petition under 42 Pa.C.S. § 9545(b)(1), which requires that petitions be filed within one year of the date the judgment becomes final. The PCRA court granted relief as to a sentencing issue, and resentenced Appellant to a concurrent term of two and one half to five years' incarceration for PIC. PCRA Ct. Op., 3/9/20, at 2. The PCRA court sent its notice of intent to dismiss per Pa.R.Crim.P. 907 on November 19, 2019, and dismissed the petition on January 17, 2020.[5] This timely appeal followed. The PCRA court and Appellant both complied with Pa.R.A.P. 1925.

---

[5] The PCRA court largely denied relief, though it did grant resentencing to correct a defect in the sentence. **See** Order, 1/17/20 (granting motion to vacate illegal sentence and to impose legal sentence). Appellant is still serving a mandatory life sentence.

Appellant brings the following claims on appeal:

1. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to (a) request a cautionary instruction prohibiting the jury from considering the overwhelming "other crimes" testimony of witness intimidation and threats as evidence that [Appellant] had a propensity to commit violence; (b) object to the trial court's instruction allowing the jury to use as evidence of [Appellant's] consciousness of guilt the other crimes committed by co-defendant Santos; and (c) object to "bad acts" evidence that was inadmissible altogether?

2. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to object to repeated instances of prosecutorial misconduct, including improper vouching for the credibility of his witnesses, asking the jury to consider the destructive impact [Appellant's] crimes had on the larger community, and "testifying" to facts with no record evidence to support them?

3. Did the PCRA court err in summarily dismissing the claim that trial counsel was ineffective for failing to object when the assigned detective offered his inadmissible opinion that Commonwealth witness Julio Rosa "was pretty honest" the first time he implicated [Appellant] and that he received repeated hearsay information that [Appellant] was involved in this killing?

Appellant's Brief at 3.

In reviewing the propriety of a PCRA court's dismissal of a petition without a hearing, the reviewing court is limited to determining whether the court's findings are supported by the record and whether the order in question is free from legal error. *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

"[A] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." *Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa. Super. 2007); Pa.R.Crim.P. 907(1). "A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007).

We must begin with a presumption that counsel has rendered effective assistance. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). A petitioner must carry the burden of demonstrating ineffectiveness,

by pleading and proving by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003); *see also Commonwealth v. Pierce*, 527 A.2d 973, 977 (Pa. 1987) (Pennsylvania's ineffectiveness standard and the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984) "constitute an identical rule of law in this Commonwealth."). Failure to satisfy any prong of the test renders an ineffective assistance of counsel claim fatally defective. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

Appellant first argues that trial counsel was ineffective for failing to request a cautionary instruction prohibiting the jury from considering the "other crimes" testimony of witness intimidation and threats, object to the trial court's instruction allowing the jury to consider as evidence of Appellant's consciousness of guilt the other crimes committed by co-defendant Santos, and object to allegedly inadmissible "bad acts" evidence.

Appellant points to the following evidence to support these claims: The prosecutor made several references to witness intimidation in opening statements, including telling the jury that "[y]ou cannot let fear and intimidation allow murderers to walk free." Appellant's Brief at 11; N.T. Trial,

1/8/15, at 30. The prosecutor told the jury "You will hear about testimony from people that believe or have heard that there are hits being placed, bounties placed on people's heads because of things they said to detectives" and "you will hear about people's statements being pos[t]ed on social media with rats, snitches[; y]ou will hear about people's statements being printed out, published and pas[sed] around the neighborhood where all these men live." N.T. Trial, 1/8/15, at 27; Appellant's Reply Brief at 5-6. Commonwealth witness Julio Rosa testified that he had tried to be relocated due to his fear of testifying. Appellant's Brief at 12. He also testified that he had been approached in jail by someone who had a copy of his police statement in this matter, which appeared to be "a veiled threat that he should not cooperate and testify." *Id.* Rosa told police that Appellant approached him in a bar and said, "[Y]ou know what to do," after Rosa told him that police were looking for him. *Id.* at 13. Rosa told police that Santos approached him at a McDonald's and told him not to speak to police. *Id.* He also told police that Appellant effectively operated as "security" for a drug-sales organization operating where the homicide occurred. *Id.* Appellant alleges that this "security" allegation amounts to propensity evidence, as it would convey to a jury that Appellant would be violent toward anyone if he was called upon to do so as a part of his "job." *Id.* at 13-14. Appellant also alleges that the prosecutor insinuated that Rosa was in protective custody because of a threat to Rosa's mother. *Id.* at 14. Rosa's probation officer testified that Rosa did not want

to testify, for fear of his life. *Id.* at 15. Appellant also points to Rosa's comment, which was stricken, that he did not want favorable treatment for cooperating with Appellant's prosecution because then "they" (presumably meaning Appellant and Santos) would know he had cooperated and "I will be in trouble." *Id.* at 14-15.[6] Appellant also points to comments made by the prosecution in arguments, referring to witness intimidation and the difficulty in getting witnesses to testify in homicide trials. *Id.* at 10-12, 14.

The PCRA court determined that its instruction on bad acts evidence was proper. PCRA Ct. Op., 3/9/2020, at 6-8. The Commonwealth argues that the PCRA court correctly concluded that the bad acts instruction was proper, and that the bad acts evidence in question was properly admitted. Commonwealth's Brief at 6, 8-18.

When reviewing a trial court's jury instructions, we "will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

> [A] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what

---

[6] The comment was stricken, and any failure to raise the issue further would render the issue waived except inasmuch as we may review it as a potential instance of ineffectiveness. For PCRA purposes, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1098 (Pa. Super. 2019) (citation omitted), *appeal denied*, 216 A.3d 1029 (Pa. 2019).

The decedent was apparently killed because he had attempted to purchase narcotics using counterfeit cash. He was killed while attempting to purchase narcotics, at a known narcotics market where Appellant and Santos worked. Thus, some "other acts" evidence was necessary, and its admission inevitable. Under Pa.R.E. 404(b)(2), permitted uses of such evidence include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Evidence that Appellant and Santos conducted security for this retail operation was necessary to establish motive.

The trial court instructed the jury that it may, but was not required, to consider "evidence tending to show that one or both of the defendants told the witness not to talk to the police" as evidence tending to show consciousness of guilt. N.T. Trial, 1/15/15, at 18; PCRA Ct. Op. at 7. The jury was also told not to consider evidence "that one or more of the witnesses may have been subject to intimidation" for consciousness of guilt, "since there is no evidence that it was caused by the defendant." *Id.* Thus, Appellant was shielded from any implication that he might have threatened a witness, though the jury was free to consider evidence tending to show that he had employed

- 9 -

less coercive means to attempt to prevent witnesses from talking to the police, solely to show consciousness of guilt. The trial court told the jury to consider evidence of the co-defendants' involvement in the illegal sale of drugs "for a limited purpose; that is, for the purpose of showing the circumstances surrounding this event, motive and the relationship between the parties." *Id.* at 19-20. The jury was also told not to regard the evidence as tending to establish bad character or criminal tendencies. *Id.* at 20. Because the trial court accurately instructed the jury, counsel cannot be faulted for failing to lodge an objection that would have been meritless. *See Commonwealth v. Chmiel*, 889 A.2d 501, 541 (Pa. 2005).[7]

Commonwealth witness Alex Cruz testified that he had made a suicide attempt a few days before he was to testify. N.T. Trial, 1/12/15, at 68-69. A police officer testified that Cruz said Appellant's mother had come to his house to tell him not to testify. *Id.* at 144. An officer also testified that Cruz had told him about "a suspicious car sitting outside his house," and detectives

---

[7] Appellant claims that he was implicated "in uncharged violent crimes for which no cautionary instructions were requested or given." Appellant's Brief at 8. His argument hinges on his distinction between involvement in drug sales and providing security for drug sales; he argues that the latter is a more egregious crime and because it was not specifically mentioned in the trial court's cautionary instruction, the instruction was not effective. *Id.* at 13-14. We find this distinction to be specious. When the trial court referred in its "other acts" instruction to "engage[ment] in the illegal sale of drugs" it could only have been referring to providing security for drug sales, as that is the only involvement in drug sales that had been mentioned regarding the two defendants. *See* N.T., 1/15/15, at 19. Thus, the jury was adequately and correctly instructed as to "other acts" evidence.

offered "to get him relocated or try to help him out somehow." N.T. Trial, 1/13/15, at 87. An officer testified that Cruz reported that Appellant had approached him while both were in custody to discourage him from going to court. N.T. Trial, 1/12/15, at 144; 1/13/15, at 87. The prosecutor asked Cruz "[d]o you remember telling me how scared you were?", though a defense objection was sustained and the question stricken. N.T. Trial, 1/12/15, at 72. Appellant also alleges that the prosecutor implied that Cruz had been threatened unlawfully to keep him from testifying. *Id.* at 77. A police officer testified that Cruz was shaking and crying hysterically when he spoke to police, the day before he committed himself to a psychiatric hospital. *Id.* at 142. The officer testified that there was a material witness petition for Cruz, but that they did not keep him in custody because he was so upset and concerned for his family. *Id.* at 138. The officer described Cruz as "upset beyond belief, sobbing, crying, a lot more than any other witness that I have ever seen" and testified that it was the first time in his four years of working with the District Attorney's office that he and the assigned prosecutor had agreed to let someone go even though they had a witness warrant and could keep that witness in custody. *Id.*

Appellant also alleges that trial counsel should have objected to evidence that investigating officers decided to leave certain witnesses' names off of case documents to protect those witnesses. Appellant's Brief at 17. However, although the officer testified that "I didn't want to put her name out

- 11 -

. . . [d]ue to the facts that these sheets are discoverable," that officer also testified that the witness did not have relevant information and claimed not to have witnessed anything. N.T., 1/13/15, at 93-94. The officer gave similar testimony about someone named Nancy Controne, who did not give a formal interview and was not a witness. *Id.* at 100-103.

Like the evidence of intimidation relating to Rosa, evidence relating to attempts to intimidate Cruz were relevant both for the jury to consider when evaluating his demeanor as a witness and, to the extent they were caused by Appellant, to show consciousness of guilt. At trial, Rosa denied having witnessed the shooting, and claimed that his police statement to the contrary was coerced. N.T., 1/8/15, at 91-99, 107-08. Cruz simply denied knowing or remembering the answers to most questions posed to him by the Commonwealth. N.T., 1/12/15, at 65-91.

Other crimes evidence "may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose, and not merely to prejudice the defendant by showing him to be a person of bad character." *Commonwealth v. Mayhue*, 639 A.2d 421, 434 (Pa. 1994). Where such evidence is more probative than prejudicial, this Court has approved introduction of evidence of witness intimidation and tampering. *See, e.g., Commonwealth v. Gad*, 190 A.3d 600, 603 (Pa. Super. 2018). The jury was accurately instructed as to how to consider this evidence, and

therefore counsel cannot have been ineffective for failing to lodge an objection. This claim is meritless.[8]

Appellant further points to a reference that was made during trial testimony trial about him having a "court date" and having been "a fugitive for a good three weeks, maybe a month before he was caught up." Appellant's Brief at 17-18. It is true that a detective testified that officers told him that they might be able to "get" Appellant while he was in court for "a [c]ourt date." N.T., 1/13/15, at 78. Counsel objected and the trial court held an off-the-record sidebar conference. *Id.* Although Appellant argues that this evidence was "inadmissible altogether" because trial counsel objected, it is not clear what action Appellant argues effective counsel would have taken here. *See* Appellant's Brief at 17-18. Further discussion would likely have called attention to a passing reference, and given that the shooting was in the context of narcotics sales, it is hard to take seriously the idea that this fleeting comment had any serious impact on the outcome of Appellant's trial. Appellant's trial counsel objected vigorously at several points during trial, and moved for a mistrial; indeed, Appellant argued on appeal that mistrial should

---

[8] Appellant submitted the testimony of an alibi witness, Juan Inglesias, who testified that Appellant was present at the scene of the shooting but was not involved. N.T., 1/13/15, at 143-46. The alibi witness also testified that he had been threatened, including by Santos' wife. *Id.* at 147. Thus, the Court's instructions as to how the jury should weigh intimidation evidence may have inured to his benefit.

have been granted.[9]  In the context of the entire trial, this improper comment cannot have had more than a minimal impact and thus Appellant cannot establish prejudice; this claim fails.

In his second claim of error, Appellant argues that the Commonwealth made improper comments, questioning, and argument during trial, and that counsel was ineffective for failing to object thereto.  On direct appeal, Appellant argued that the trial court committed reversible error in denying his mistrial motion prompted by the Commonwealth's improper questioning of his alibi witness.  He also argued that the trial court should have declared a mistrial after the Commonwealth engaged in improper bolstering regarding Cruz's testimony, and that the bolstering also constituted unsworn inadmissible hearsay.  To the extent that Appellant's claims echo those made on direct appeal, they are previously litigated and may not be resuscitated via ineffectiveness claims brought under the PCRA.  **See** 42 Pa.C.S. § 9544(a)(2) ("For purposes of [the PCRA], an issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]").

_____

[9] **See Colon**, 1701 EDA 2015, at 8-14 (concluding that the mistrial motion was rightly denied); concurring and dissenting memorandum at 1-4 (concluding that denial of mistrial was reversible error).  Although we conclude that Appellant cannot establish prejudice, the failure of this argument on direct appeal establishes also that its merit is not of sufficient strength to establish the "arguably meritorious" arm of the **Strickland** standard either.

- 14 -

The PCRA court determined that all the alleged incidences of prosecutorial misconduct were within the latitude our courts afford prosecutors in argument and cross-examination. PCRA Ct. Op. at 16-26. Likewise, the Commonwealth argues that the prosecutor's comments were within the bounds permitted in argument, and questions put to Appellant's alibi witness were an appropriate means of testing the credibility of his testimony. Commonwealth's Brief at 6, 18-38.

First, Appellant argues that the prosecution's opening statement was inappropriate for its references to substance abuse and addiction as a significant societal problem. In examining the opening statement, this Court concludes that the prosecution was simply trying to contextualize the shooting, where the victim was apparently in the throes of drug addiction when he was killed. This is not improper, and does not make this case comparable to others in which our courts have found prosecutorial comment to be inappropriate.

"In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super. 2006) (citation omitted). "[P]rosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to

weigh the evidence objectively and render a true verdict." ***Commonwealth v. Holley***, 945 A.2d 241, 250 (Pa. Super. 2008) (citations and quotation marks omitted). We evaluate claims of prosecutorial misconduct under a harmless error standard. ***Id.***

The comment in the prosecution's opening about the significance of drug addiction as a societal problem is one that most people would find utterly noncontroversial, and does not seem in any way likely to cause prejudice. Comments that the drug organization for which Appellant allegedly worked had "locked down" the area where the shooting occurred, when viewed in context, was also not inappropriate. ***See*** N.T., 1/8/15, at 23.

First we note that the prosecutor said, only a few sentences later, "[Appellant and Santos] work that corner and they sell the drugs; no one else." ***Id.*** Thus, the comment was not as broad as Appellant implies, as it was quickly confined to the immediate area where the shooting occurred, and thus, contrary to Appellant's claim, did not tend to assert that he and Santos were part of a large, sprawling drug network controlling "vast areas" of Philadelphia. ***See*** Appellant's Brief at 39. Further, the trial court twice cautioned the jury that counsel's arguments are not evidence. N.T., 1/15/15, at 13-14; N.T., 1/8/15, at 19. Because jurors are presumed to follow trial court instructions, and because none of the comments to which Appellant objects rise to the level where they could be found to unavoidably prejudice the jurors by forming in their minds a fixed bias and hostility toward him, thus

impeding their ability to weigh the evidence objectively and render a true verdict, counsel was not ineffective for failing to object. *See Commonwealth v. La Cava*, 666 A.2d 221, 228 (Pa. 1995).

Because Appellant already brought three claims arising from instances of alleged prosecutorial excess in his direct appeal, and because the claims now brought under the ineffectiveness paradigm do not rise to the level that would justify relief, this Court cannot grant it.

Finally, Appellant alleges that trial counsel was ineffective for failing to object when the assigned detective offered his opinion at trial that Rosa "was pretty honest" when he implicated Appellant in the shooting, and that he had received repeated hearsay information indicating that Appellant was involved in this killing. Appellant's Brief at 57.

The PCRA court concluded that the detective's testimony was properly admitted to explain the course of conduct taken by police in their investigation, and the "pretty honest" comment was referring to the fact that Rosa was forthcoming about having seen the detective and attempted to elude him. PCRA Ct. Op. at 28-29. The Commonwealth points out that the defense "made an issue out of the delay between the time of the shooting and when [Appellant] was arrested" and thus its course of conduct evidence was fair response. Commonwealth's Brief at 6-7, 39-45.

Philadelphia Police Detective Ronald Aitken testified that he spoke with people who said that they had not been present at the shooting, but had

"heard" that two men known as Will and Taz were the shooters. N.T., 1/13/15, at 70. He subsequently came to know that these names referred to Appellant and Santos. *Id.* at 71. In the course of describing how he conducted his investigation, he describes getting a tip that Julio Rosa had witnessed the shooting, and had an active warrant arising from a probation violation. *Id.* at 71-72. Although Rosa ran from him when he attempted to talk to him, the detective left his card on Rosa's car. *Id.* at 73. Subsequently, Rosa called him to ask why the detective wanted to speak with him. *Id.* Rosa was eventually brought in to be interviewed by the detective, and they initially discussed his probation issue. *Id.* at 74-75. The detective testified that their conversation continued as follows:

> I talked to Mr. Rosa maybe about two hours, three hours. I said, "Look, you know, we have to talk about this job, what you saw."
>
> **He was pretty honest at the time. He told me that he saw me.**
>
> He told me he was walking through that way. He said something about getting a haircut. He didn't know these people and he saw the shooting. He was willing to give me an interview, a statement.

*Id.* at 75 (emphasis added).

Appellant claims that trial counsel was ineffective for failing to object both to the hearsay about "Will and Taz" and to what he describes as impermissible bolstering, where Detective Aitken characterizes Rosa as "pretty honest at the time." First, taken in context, the "pretty honest"

comment seems to relate more to Rosa's interactions with the detective, and Rosa's probation issues. Further, it seems likely that it relates to Rosa's attempts to evade the detective; because the detective had tried to contact him but he had run, and because they had spoken on the phone and the detective began the interrogation by reminding Rosa of their phone call, jurors likely concluded that Rosa was "pretty honest" about having attempted to evade the detective. Thus, the jury would not necessarily connect it with the subsequent narrative of the shooting. Because the detective was describing the course of the investigation, his testimony seemed to show that Rosa was the first eyewitness to describe the shooting to him; thus, at that time, he would have had no independent basis to evaluate whether Rosa was "pretty honest" about the shooting itself. In context, the statement is not immediately connected to Rosa's account of the crime, and it makes more sense that the jury would have assumed that Rosa was being forthcoming about his own evasive behavior and probation troubles. Any objection would have only called attention to the comment, and would likely have been overruled in any event.

The comment about hearing that people were saying that "Will and Taz" had committed the shooting was admissible to show the course of the investigation. "An out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003) (citations omitted). The comments were made by people who

claimed not to have witnessed the shooting themselves, but only to have "heard" that these were the shooters. N.T., 1/13/15, at 71. There is no reason to believe the jury would put any stock in such statements. However, the statements demonstrated the course of the investigation as narrated by the detective who conducted it. This is a permissible non-hearsay use of such statements under **Dent**. Both the "Will and Taz" reference and the comment about Rosa's honesty fall within this category of non-hearsay use. This evidence also falls within the "complete story" (*res gestae*) exception articulated in **Commonwealth v. Lark**, 543 A.2d 491 (Pa. 1988). **See id.** at 497 (under *res gestae* exception to the general proscription against evidence of other crimes, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place"). Thus, Appellant cannot establish that counsel was ineffective, or that if counsel would have objected, any meaningful aspect of the trial might have gone differently.

Because Appellant has not established that trial counsel was ineffective or that there was any reasonable probability that his trial outcome might have been different if counsel had pursued a different strategy, his claims fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/23/20</u>