J-S33043-18

2018 PA Super 160

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHMED F. GAD | : | |
| | : | |
| Appellant | : | No. 3100 EDA 2017 |

Appeal from the Judgment of Sentence July 26, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0003326-2016

BEFORE: OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.: **FILED JUNE 11, 2018**

Appellant Ahmed F. Gad appeals from the judgment of sentence entered in the Court of Common Pleas of Northampton County following his conviction by a jury on the charges of simple assault and harassment.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with the domestic abuse of Eva Fisher, his wife. On March 3, 2017, the Commonwealth filed notice of its intent to introduce evidence of prior crimes, wrong, or acts pursuant to Pa.R.E. 404(b)(2). Relevantly, the Commonwealth sought to introduce evidence relating to Appellant's prior physical abuse and witness intimidation of his former paramour, Maryam Ezatt. Appellant filed a response in opposition to the

_____

[1] 18 Pa.C.S.A. §§ 2701(a)(1) and 2709(a)(1), respectively.

_____

* Former Justice specially assigned to the Superior Court.

introduction of the evidence. On April 3, 2017, the trial court granted the Commonwealth's request to admit the evidence pursuant to Pa.R.E. 404(b)(2).

Appellant, represented by counsel, proceeded to a jury trial on June 6, 2017. At trial, the Commonwealth presented the testimony of Police Officer Kevin Lillis, physician's assistant Monika Garcia, and Appellant's former paramour, Ms. Ezatt.[2]

Specifically, Officer Lillis testified that, on September 12, 2016, Ms. Fisher approached him requesting assistance in finding a homeless shelter for her to stay in for the night. N.T., 6/6/17, at 23. Officer Lillis observed Ms. Fisher had "a contusion on the left side of her face along her cheekbone and she had contusions also behind her ear, and her ear was swollen. Also, around her neck as well as a swollen lip." *Id.* Officer Lillis summoned an ambulance, which transported Ms. Fisher to the emergency room for treatment. *Id.* at 26. On September 17, 2016, when the officer went to the couple's home to arrest Appellant, Ms. Fisher answered the door. *Id.* at 27.

Ms. Garcia testified she treated Ms. Fisher on September 12, 2016, in the emergency room. *Id.* at 34. She testified Ms. Fisher had bruising to the

---

[2] Although Appellant's wife testified against Appellant at his September 2016 preliminary hearing, Appellant's wife did not appear at the trial. Officer Lillis testified that neither law enforcement officials nor her family had any contact with her since March of 2017. N.T., 6/6/17, at 28.

left side of her face, cheek, forehead, and ear. *Id.* at 35. Ms. Fisher reported she had been assaulted and slapped in the face. *Id.* at 36.

Ms. Ezatt testified she used to be Appellant's paramour, and on September 30, 2013, Appellant hit her in the face and then intimidated her in an attempt to force her not to cooperate with the police. *Id.* at 41-42. Ms. Ezatt testified that her relationship with Appellant ended in 2015; however, Appellant resumed contact with her in July of 2016. In the fall of 2016, Appellant texted her, indicated he was "in trouble," and said he "needed her help." *Id.* at 43. Ms. Ezatt testified Appellant admitted to her that he had hit his wife and he was pressuring her to drop the charges. *Id.* at 45.

Appellant testified in his own defense. Specifically, he testified that he was not at home on September 12, 2016; but rather, he was at work all day. *Id.* at 78. He specifically denied striking his wife or telling her not to appear for court. *Id.* at 79-81.

At the conclusion of all testimony, the jury convicted Appellant of the offenses indicated *supra*, and on July 26, 2017, the trial court sentenced Appellant to twelve months to twenty-four months in prison for simple assault and a consecutive forty-five days to ninety days in prison for harassment. Appellant filed a timely motion for reconsideration of sentence, which the trial court denied on August 4, 2017. This timely appeal followed. All Pa.R.A.P. 1925 requirements have been met.

Appellant sets forth the following issue in his "Statement of Questions

Involved" (verbatim):

> Whether the trial court erred as a matter of law in granting the
> Commonwealth's Motion to Introduce Evidence of Prior Bad Acts
> under Pa.R.E. 404(b) where the evidence was overly prejudicial to
> [Appellant]?

Appellant's Brief at 4.

Initially, we note:

> [t]he admission of evidence is solely within the discretion of the
> trial court, and a trial court's evidentiary rulings will be reversed
> on appeal only upon an abuse of that discretion. An abuse of
> discretion will not be found based on a mere error of judgment,
> but rather occurs where the court has reached a conclusion that
> overrides or misapplies the law, or where the judgment exercised
> is manifestly unreasonable, or the result of partiality, prejudice,
> bias or ill-will.

**Commonwealth v. Woodard**, 634 Pa. 162, 129 A.3d 480, 494 (2015)

(quotation marks, quotation, and citation omitted).

The general threshold for admissibility of evidence is relevance.

Evidence is relevant if it has any tendency to make a fact more or less probable

than it would be without the evidence and the fact is of consequence to

determining the action. Pa.R.E. 401. All relevant evidence is admissible,

subject to certain exceptions. Pa.R.E. 402. Relevant to this claim, evidence

of another crime, wrong, or other act is not admissible to prove a person's

character or to show that, on a particular occasion, the person acted in

accordance with that character. Pa.R.E. 404(b)(1). However, such evidence

may be admissible to prove

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988) (citation omitted). Our Supreme Court "has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.'" *Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, 665 (2014) (citations omitted).

Nevertheless, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Lark*, 518 Pa. 290, 543 A.2d at 497. "Unfair prejudice" means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. Pa.R.E. 403, comment. Thus, the admission of the evidence "becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 496–98 (2009) (quotation marks and quotation omitted).

J-S33043-18

With these legal precepts in mind, we turn to an examination of the relevant testimony, which occurred during the Commonwealth's direct examination of Ms. Ezatt:[3]

> Q. When did you move to Pennsylvania?
>
> A. End of June 2011.
>
> Q. Maryam, I'd like to direct your attention to September, 30th, 2013, could you previously [*sic*] describe for the jury, what, if anything, happened on that date involving you and [Appellant]?
>
> A. Um, we were in an argument, and I was the one driving, and he started to like hit me and punch me in the face. And then I stopped the car in the middle of the street, and I ran from the car and some people were helping me. And, like, I called the police and he got arrested, and they took me to the hospital that night.
>
> Q. And while that assault case was pending, did [Appellant] contact you?
>
> A. Yes, he did.
>
> Q. And, what, if anything did [Appellant] tell you to do with regard to that case?
>
> A. He asked me to. He wrote a note to me, make it ready for me, and ask[ed] me to go to Lehigh County to the public defender's office to give them a note that I wanted to drop the charges for him.

_____

[3] We note with disapproval that Appellant has not set forth the precise testimony or citation to the record with regard to his claim. Rather, he argues generally that the trial court erred in granting the Commonwealth's Pa.R.E. 404(b) motion and in allowing the prior victim "to testify to Appellant's prior abuse against her, as well as evidence of witness intimidation when she was the victim." Appellant's Brief at 8. To compound matters, Appellant indicates Ms. Ezatt was "a victim of a prior incident with Appellant from 2014." Appellant's Brief at 10. We have found no evidence indicating Appellant assaulted Ms. Ezatt in 2014, although we found testimony from Ms. Ezatt indicating Appellant assaulted her in 2013. We remind Appellant that it is not this Court's duty to scour the record and develop claims for him. *See Commonwealth v. Baker*, 963 A.2d 495 (Pa.Super. 2008).

Q. So he had you deliver a letter that said you wanted to drop the charges?

A. Yes.

Q. Is that right?

A. (Witness nods head.)

Q. Did you want to write the letter?

A. No.

Q. Can you tell the jury why you wrote the letter?

A. Because I was scared of him.

Q. And what was the outcome of those Lehigh County cases, if you know.

A. He pled guilty.

Q. Okay. And, specifically, the charges, did he plead guilty to one that involved—

A. He pled guilty for hitting me and he pled guilty that he forced me to write that note.

N.T., 6/6/17, at 40-42.

Appellant contends the trial court erred in permitting the Commonwealth to offer the aforementioned evidence of Appellant's prior bad acts as it does not meet the requirements of a common scheme, plan, or design. **See** Appellant's Brief at 11. However, as the trial court explained, the bad acts evidence was admissible under Pa.R.E. 404(b)(2) to tell "the complete story"[4]

---

[4] With regard to permitting evidence of Appellant's bad acts to "complete the story," the trial court noted that the victim, Ms. Fisher, did not appear for trial. Trial Court Opinion, filed 10/4/17, at 6. The trial court reasoned that:

Given the victim's absence from the trial, the Commonwealth was rightly concerned that the jury would speculate as to the reason therefor. Accordingly, [the Commonwealth] had a legitimate purpose in demonstrating that the victim was not absent from the

and demonstrate an "absence of mistake or accident."[5] *See Hairston*, *supra*. Appellant has presented no argument that the trial court erred in finding the evidence admissible under these specific exceptions.

However, this does not end our inquiry. As Appellant aptly argues, although evidence of a defendant's prior bad acts may meet one of the permitted uses set forth in Pa.R.E. 404(b)(2), it "is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

In balancing whether the probative value of the evidence outweighed its potential for unfair prejudice, the trial court noted that Ms. Ezatt's testimony was illustrative of Ms. Fisher's unavailability as a witness at trial. Trial Court Opinion, filed 10/4/17, at 6. The trial court held that "[w]hile Ms. Ezatt's testimony was prejudicial to [Appellant], it was not unduly so. Furthermore,

---

trial because there was no basis for the charges—as argued in opening statements by defense counsel—but rather because [Appellant] had occasioned her unavailability. In pursuit of this legitimate purpose, it was proper for the [trial] [c]ourt to permit Ms. Ezatt to testify that [Appellant] had, in the past, attempted to manipulate a paramour into not pursuing charges against him for domestic violence.

*Id.* at 5-6.

[5] With regard to the "absence of mistake or accident," the trial court noted Appellant's defense at trial, as demonstrated through defense counsel's cross-examination of Ms. Garcia, was that "a seizure disorder was the culprit for Ms. Fischer's [*sic*] injuries. . . .Ms. Ezatt's testimony to the effect that [Appellant] had a history of abusing his partners belied such a claim." Trial Court Opinion, filed 10/4/17, at 6.

there was clearly a great need for the information she provided, and the probative value was high." *Id.* Thus, the trial court held the probative value of the evidence outweighed its potential for unfair prejudice. *See id.*

We find no abuse of discretion in this regard. *See Woodard*, *supra*. "Evidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case." *Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa.Super. 2015). Further, "[t]he trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration[.]" *Hairston*, 624 Pa. 143, 84 A.3d at 666 (quotation marks and quotation omitted). Although evidence of Appellant's prior assault and intimidation of his former paramour may have been prejudicial, we conclude the trial court did not abuse its discretion in finding it was not unfairly so. *See id.*

For all of the foregoing reasons, we affirm.

Affirmed.

Judge McLaughlin joins the memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/18