J-A16039-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY CARROLL | : | |
| | : | |
| Appellant | : | No. 1137 MDA 2020 |

Appeal from the Judgment of Sentence Entered August 3, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004294-2018

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:             **FILED AUGUST 06, 2021**

Appellant Rodney Carroll appeals from the judgment of sentence entered by the Court of Common Pleas of Luzerne County after a jury convicted Appellant of two counts each of robbery, simple assault, unlawful restraint, recklessly endangering another person, terroristic threats, and one count of theft by unlawful taking.  Appellant argues that the trial court abused its discretion in allowing the Commonwealth to admit his recorded confession to a subsequent robbery that he committed in Philadelphia County.  We affirm.

Appellant was charged with the aforementioned offenses in connection with the March 30, 2018 robbery of a Curry Donuts store on South Pennsylvania Avenue in Wilkes-Barre, Luzerne County, Pennsylvania.  Appellant proceeded to a jury trial which commenced on January 7, 2020.

_____

[*] Former Justice specially assigned to the Superior Court.

At trial, the following factual background was developed: in the early evening hours of March 30, 2018, at approximately 7:10 p.m., a tall African-American male wearing an Irish cap entered the Curry Donuts shop, armed with a firearm. Notes of Testimony (N.T.), 1/7/2020 – 1/9/2020, at 38-39. The man brandished the firearm and pointed it at the two employees, Brandon Gawelko and Athena Rittenhouse. N.T. at 39, 57-58. Rittenhouse described the male as a tall black man in his 40s, estimated his height to be "close to six foot," and indicated that the weapon was a "very large gun" that was black and possibly resembled an assault rifle. N.T. at 38-40. Gawelko described the male as a tall black man in his late 30s or early 40s with a black rifle and estimated the robber's height to be 5'9 or 5'10. N.T. at 56-57.

The male directed Gawelko to lay down on the floor and stated, "[d]on't move, homeboy" while pointing the weapon at him. N.T. at 60. Rittenhouse, frightened by the encounter, pleaded with the male not to hurt them and indicated that she had a one-year-old son. N.T. at 39. The male told Rittenhouse if she cooperated, no one would be hurt. N.T. at 40.

Thereafter, the male instructed Rittenhouse to get him money out of the cash registers, her purse, and Gawelko's pockets, urging her to hurry or "homeboy is going to get it." N.T. at 43. The male then forced Rittenhouse and Gawelko into a storage room, made them lay on the floor, and told them to stare at the floor. N.T. at 44, 60. When Rittenhouse heard a car leave, she got up and immediately called 9-1-1. N.T. at 45, 62. The police arrived

shortly thereafter and accessed surveillance camera footage from the Curry Donuts and the neighboring beer distributor store. N.T. at 46, 77-78.

Detective Matthew Stash of the Wilkes-Barre Police Department was assigned to the case and reviewed the evidence obtained by the responding officers. N.T. at 102. Detective Stash captured a still image of the robber from the surveillance video and received information that the robber fled in a silver Ford Fusion with New Jersey license plates. N.T. at 105-106. Detective Stash uploaded this information on the Pennsylvania State Police Intelligence Network, in which law enforcement share information about pending investigations. N.T. at 105.

On April 6, 2018, Philadelphia Police Detective Dennis Rosenbaum contacted Detective Stash and informed him that they had arrested a male for a similar robbery of a Pizza Hut in Philadelphia that involved a silver Ford Fusion with a New Jersey license plate and an assault type rifle replica. The male, Appellant, matched the description that was previously sent out to law enforcement. N.T. at 106-107. Moreover, Detective Rosenbaum noted that Appellant had previously resided in Wilkes-Barre. N.T. at 106.

After receiving this information, Detective Stash placed Appellant's picture in a photo array containing eight individuals. N.T. at 106. When Detective Stash presented the array to Gawelko and Rittenhouse, Gawelko immediately identified Appellant as the robber of the Curry Donuts. N.T. at 62-63, 106. Rittenhouse was unable to identify anyone in the photo array. N.T. at 48.

As a result, Detective Stash traveled to Philadelphia, where Appellant was being held in custody by the Philadelphia Police Department. N.T. at 109. Detective Stash interviewed Appellant after providing his **Miranda** rights. N.T. at 110. Appellant admitted to renting a silver Ford Fusion using an app on his phone and indicated that he was the only one who drove the car. N.T. at 111. When asked about the robbery of the Curry Donuts store in Wilkes-Barre, Appellant denied being involved and indicated that he had not been in Wilkes-Barre for a very long time. N.T. at 112. Detective Stash photographed the rifle replica found in Appellant's possession when he was arrested by the Philadelphia police. N.T. at 111. Gawelko subsequently identified the weapon captured in this photo as the rifle involved in the robbery. N.T. 62-64.

The Philadelphia police detectives also provided Detective Stash a video recording of Appellant's confession to robbing the Pizza Hut in Philadelphia on April 5, 2018. N.T. at 112. In the video, Appellant admitted to robbing the Pizza Hut with a rifle replica as he had lost two jobs and was behind on multiple bills, including his rent. N.T. at 115. While Appellant brandished his weapon during the robbery, he emphasized that he assured the people inside that no one would get hurt if they complied with his directions. N.T. at 116. Appellant indicated that he picked the Pizza Hut because he believed it was not busy and did not have a lot of people inside. N.T. at 122. Appellant indicated that he "didn't want nobody to try nothing … I didn't want to even get to that point." N.T. at 122.

Appellant indicated that when he saw an officer standing at the door of the Pizza Hut, Appellant ran out of the back door and threw the gun in some bushes. N.T. at 116-17, 121. Appellant indicated that he had previously rented a silver Ford Fusion with New Jersey license plates from the FlexDrive internet application and parked it outside the restaurant. N.T. at 120.

At trial, the prosecution presented that testimony of Frank Daccardi, an employee of ARI Fleet Management, a company that tracks rental vehicles through GPS. N.T. at 82-86. Daccardi was able to access and retrieve location information on the rental car that Appellant had admitted driving to the robbery of the Pizza Hut in Philadelphia.

Daccardi indicated that the GPS tracking records placed the silver Ford Fusion that was rented to Appellant from FlexDrive in Philadelphia on the morning of March 30, 2018. N.T. at 88-91. Thereafter, the vehicle arrived at 7:14 p.m. at 178 South Pennsylvania Avenue in Wilkes-Barre, where Curry Donuts is located. N.T. at 93. At 7:23 p.m., the vehicle left the Wilkes-Barre location and traveled to the Pennsylvania Turnpike Northeast Extension and to two different locations in Philadelphia. N.T. at 93-95.

Appellant, who chose to testify in his own defense, admitted at trial that he had rented a silver Ford Fusion from FlexDrive during the time period in question. N.T. at 152. In addition, Appellant conceded that he had robbed the Pizza Hut in Philadelphia. N.T. at 150. However, Appellant denied committing the robbery of the Curry Donuts in Wilkes-Barre and claimed he

had been on a date with his girlfriend in which they went skating and to the movies. N.T. at 150.

Appellant agreed that the GPS location data showed that the car he had rented had traveled to Wilkes-Barre on the night of March 30, 2018, but Appellant asserted that he had not driven the car there and did not rob the Curry Donuts store. N.T. at 152. Appellant indicated that he was between 6'3 and 6'4 in height. N.T. at 151.

At the conclusion of the trial, on January 9, 2020, the jury convicted Appellant of all of the aforementioned offenses. On August 3, 2020, the trial court imposed an aggregate sentence of twenty-two to forty-four years' imprisonment. Appellant did not file a post-sentence motion.

On September 2, 2020, Appellant filed a timely notice of appeal and subsequently complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review on appeal:

> Did the trial court err and abuse its discretion in allowing the Commonwealth to admit and play the recorded statement of the Appellant involving the alleged commission of a robbery in Philadelphia as a prior wrong or bad act, under Pa.R.E. 404[](b)(2), where, even if relevant, the probative value did not outweigh its potential for being unfairly prejudicial to the Appellant and depriving him of his federal and state constitutional right to a fair trial?

Appellant's Brief, at 2.

Our standard of review is well-established:

> "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting

- 6 -

prejudice, constitutes reversible error." ***Commonwealth v. Ballard***, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

> ***Commonwealth v. Goldman***, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014).

***Commonwealth v. Hudson-Greenly***, 247 A.3d 21, 24 (Pa.Super. 2021).

In reviewing Appellant's challenge to the trial court's discretion in allowing the prosecution to admit a recording of his confession to another robbery, we are mindful of the following principles:

> The general threshold for admissibility of evidence is relevance. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence to determining the action. Pa.R.E. 401. All relevant evidence is admissible, subject to certain exceptions. Pa.R.E. 402. Relevant to this claim, evidence of another crime, wrong, or other act is not admissible to prove a person's character or to show that, on a particular occasion, the person acted in accordance with that character. Pa.R.E. 404(b)(1). However, such evidence may be admissible to prove

>> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that

proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988) (citation omitted). Our Supreme Court "has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.'" *Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, 665 (2014) (citations omitted).

Nevertheless, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Lark*, 518 Pa. 290, 543 A.2d at 497. "Unfair prejudice" means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. Pa.R.E. 403, comment. Thus, the admission of the evidence "becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 496–98 (2009) (quotation marks and quotation omitted).

*Commonwealth v. Gad*, 190 A.3d 600, 603 (Pa.Super. 2018).

We initially note that Appellant concedes that the evidence of his recorded confession to the robbery of the Philadelphia Pizza Hut meets the relevance requirements of Rule 404(b). Appellant does not challenge the trial court's decision to accept the Commonwealth's assertion that the facts of the Pizza Hut robbery were substantially similar to the facts of Curry Donuts robbery to render Appellant's confession to the Pizza Hut robbery admissible under Rule 404(b) to show Appellant's *modus operandi* (M.O.), common plan, and identity as the robber of the Curry Donuts.

Appellant limits his argument to contend that, even if relevant, Appellant's confession to the Pizza Hut robbery should have been excluded as the probative value of the evidence was outweighed by the potential for

causing unfair prejudice. Appellant specifically cites to **Commonwealth v. Saez**, 225 A.3d 169, 180 (Pa.Super. 2019), in which this Court has held that in assuring that the probative value is not outweighed by his potential for unfair prejudice, the trial court must:

> balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Id*. at 180 (quoting **Commonwealth v. Tyson**, 119 A.3d 353, 359 (Pa. Super. 2015)).

Specifically, Appellant argues that the trial court did not adequately balance the potential for unfair prejudice with the factors set forth in **Saez**. First, while acknowledging that there were similarities between the robberies at issue in this case, Appellant argues that the similarities were common to all robberies and the commonalities were not so specific to show Appellant had a "signature" plan. Appellant's Brief, at 15. Second, Appellant argues that the trial court did not evaluate whether the prosecution had a need to present his confession. Appellant contends that, as the Commonwealth had other evidence tying Appellant to the Curry Donuts robbery,

> the admission of the Philadelphia confession was unnecessary to the Commonwealth's case and could serve only one purpose, to raise the inference that the Appellant, because he admitted to what the Commonwealth asserted was a similar crime, possessed the character and propensities of acting in accordance with those of a robber and, therefore, committed the Wilkes-Barre robbery at Curry Donuts.

- 9 -

Appellant's Brief, at 16-17. Lastly, Appellant asserts that the trial court's limiting instruction could not ameliorate the unfair prejudice caused by the admission of the recording of Appellant's confession to another robbery.

However, while the admission of the Appellant's confession to the Pizza Hut robbery was harmful to the defense, we agree with the trial court's determination that Appellant did not show that *unfair* prejudice resulted such that the probative value of the evidence was outweighed by its potential for unfair prejudice. **Tyson**, 119 A.3d at 360 (quoting **Commonwealth v. Dillon**, 592 Pa. 351, 366, 925 A.2d 131, 141 (2007) ("[e]vidence will not be prohibited merely because it is harmful to the defendant")).

We reject Appellant's suggestion that the two robberies did not have a high degree of similarity beyond shared commonalities between typical robberies. In this case, the robberies, which occurred just five days apart, were committed with the use of a replica AR-15 style rifle and the same silver Ford Fusion with a New Jersey license plate. Both the weapon and the vehicle were found at the scene of the Pizza Hut robbery where Appellant was taken into custody. Clearly, the facts of the Pizza Hut robbery had probative value to show Appellant's *modus operandi*, common plan, and his identity as the robber of the Curry Donuts.

In addition, we are not persuaded by Appellant's assertion that his confession was absolutely unnecessary to the Commonwealth's case and only served to convince the jury of his bad character. While Appellant admittedly

confessed to the Pizza Hut robbery in Philadelphia, he adamantly denied at trial that he was the individual who robbed the Curry Donuts in Wilkes-Barre.

Appellant's confession to the Pizza Hut robbery described in detail how he selected his robbery target. Appellant chose the Pizza Hut as it was a business where there were few customers, such that he would be able to take control easily and eliminate the potential for a conflict. Similarly, in this case, the robbery of the Curry Donuts occurred at approximately 7 p.m., an evening hour at which a donut shop does not typically contain a large amount of customers and only contained two employees on the night of the robbery.

Appellant's confession also corroborated the accounts of the eyewitnesses to the Curry Donuts robbery when Appellant attacked the reliability of their testimony. Appellant emphasized to the Philadelphia police officers that he assured the individuals inside the Pizza Hut that he would not harm them. Gawelko and Rittenhouse testified that the robber of the Curry Donuts assured them that they would not be harmed if they complied with his instructions.

Lastly, any prejudicial impact of the admission of Appellant's confession to the Pizza Hut robbery was minimized by the trial court's cautionary instruction that was given immediately after the confession was admitted. **See** Pa.R.E. 404(b) cmt.; **Hairston**, 624 Pa. at 160, 84 A.3d at 666 (clarifying that a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence [under Rule 404(b)]").

The trial court informed the jury about the limited purpose of considering this evidence and to clarify that the jury was not permitted to treat the evidence as proof of Appellant's bad character. N.T. at 124. "Jurors are presumed to follow the trial court's instructions." *Hairston*, 624 Pa. at 160, 84 A.3d at 666.

Moreover, we emphasize that "[i]n balancing the probative value of the evidence against its prejudicial impact, this Court has opined that a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration." *Saez*, 225 A.3d at 180–81 (quoting *Commonwealth v. Golphin*, 161 A.3d 1009, 1022 (Pa.Super. 2017) (internal quotation marks omitted).

Accordingly, we conclude that the trial court did not abuse its discretion in allowing the admission of Appellant's confession to the Pizza Hut robbery in Philadelphia in his prosecution for the robbery in this case.

Judgment of sentence affirmed.

Judge McCaffery join the memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/06/2021

- 12 -