J-S32021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CULMER | : | |
| | : | |
| Appellant | : | No. 483 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 23, 2019
In the Court of Common Pleas of Cambria County
Criminal Division at CP-11-CR-0001010-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CULMER | : | |
| | : | |
| Appellant | : | No. 484 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 23, 2019
In the Court of Common Pleas of Cambria County
Criminal Division at CP-11-CR-0001011-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CULMER, JR. | : | |
| | : | |
| Appellant | : | No. 485 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 23, 2019
In the Court of Common Pleas of Cambria County
Criminal Division at CP-11-CR-0001071-2018

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED:  December 3, 2021**

Daniel Culmer, Jr. (Appellant) appeals from the judgment of sentence imposed after he was convicted of two counts of recklessly endangering another person, and one count each of discharging a firearm into an occupied structure, flight to avoid apprehension, person not to possess firearms, and driving while operating privilege is suspended or revoked.[1]  We affirm.

On April 25, 2018, Appellant was involved in a domestic dispute with Brayanna Lightfoot (Victim) at the Victim's home.  Appellant left the residence, but returned a few hours later, firing a handgun into the residence while the Victim and six-year-old child were inside.  Appellant fled the scene and was not arrested until a few months later.  As a result, the Commonwealth charged Appellant at three separate dockets:  1010-2018, 1011-2018, and 1071-2018.  The trial court summarized:

> The cases filed at 1010-2018 and 1011-2018 were consolidated on November 7, 2018.  Those cases were further consolidated for the purposes of trial with the case filed at 1071-2018 on April 3, 2019.  A jury trial was subsequently held on May 20, 2019 and May 21, 2019.  The jury found Appellant guilty of Count 2: Discharge of a Firearm into an Occupied Structure, Count 3: Recklessly Endangering Another Person ([Victim]), Count 4: Recklessly Endangering Another Person (L.C., a female juvenile) on the case filed at 1011-2018, and Count 1: Flight to Avoid Apprehension, Trial or Punishment on the case filed at 1071-2018.  The jury found the Appellant not guilty of Count 1: Simple Assault on the case filed at 1010-2018.

---

[1] 18 Pa.C.S.A. §§ 2705, 2707.1(a), 5126(a), 6105(a)(1), and 75 Pa.C.S.A. § 1543(b)(1).

The Appellant was also found guilty, through the non-jury phase of the trial, of the following: on the case filed at 1010-2018, Count 3, Driving while Operating Privilege is Suspended or Revoked, and on the case filed at 1011-2018, Count 1, Person not to Possess, Use, Manufacture, Control, Sell [or] Transfer Firearms.

Trial Court Opinion, 1/21/20, at 1-2.

On July 23, 2019, the trial court sentenced Appellant to an aggregate 5 to 10 years of incarceration. Appellant timely appealed.[2] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents four issues for review:

1. Whether the [t]rial [c]ourt erred in not finding that the Commonwealth exercised its peremptory challenges in a racially discriminatory manner?

2. Whether the [t]rial [c]ourt erred in not finding that the Commonwealth committed prosecutorial misconduct in exercising its peremptory challenges during jury selection?

3. Whether the [t]rial [c]ourt erred in admitting the telephone conversations between the Appellant and the Appellant's sister, Sabrina Culmer?

---

[2] On August 14, 2019, Appellant's counsel filed a motion to withdraw. On August 19, 2019, Appellant filed a counseled notice of appeal. That same day, the trial court granted counsel's request to withdraw, but did not appoint new counsel. On April 28, 2020, this Court dismissed Appellant's appeal docketed at 1295 WDA 2019 for failure to file a brief. *See* Order, 4/28/20. On February 11, 2021, Appellant *pro se* filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, requesting that his direct appeal rights be reinstated. The court granted the petition, reinstated Appellant's direct appeal rights, and appointed Timothy Burns, Esquire, to represent Appellant. On April 12, 2021, Appellant filed a notice of appeal at each of his three dockets, in compliance with *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018). On May 5, 2021, this Court consolidated Appellant's appeals *sua sponte*.

4. Whether the [t]rial [c]ourt erred in admitting Detective Amanda Fox's characterization of a mentioned individual, Tyrone Smith, as a known narcotics trafficker?

Appellant's Brief at 5.

Appellant first argues that pursuant to **Batson v. Kentucky**, 476 U.S. 79 (1986), the trial court "erred in not finding that the Commonwealth exercised its peremptory challenges in a racially discriminatory manner during [jury] selection, when the lone African-American juror was struck from the jury pool." Appellant's Brief at 10. Appellant asserts the Commonwealth "failed to provide a sufficient answer or explanation as to the reason the lone African-American juror was struck from the [j]ury [p]anel." **Id.** at 11.

We have explained:

A **Batson** claim presents mixed questions of law and fact. Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous. The ultimate burden of persuasion regarding racial motivation rests with the opponent of the strike.

**Commonwealth v. Murray**, 248 A.3d 557, 567 (Pa. Super. 2021) (some citations omitted). In **Batson**,

… the United States Supreme Court held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution. … When a defendant makes a **Batson** challenge during jury selection:

First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then

- 4 -

> make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

> ***Commonwealth v. Thompson***, 106 A.3d 742, 751 (Pa. Super. 2014).

> The trial court should consider the totality of the circumstances when determining whether the prosecutor acted with discriminatory intent. This Court must give great deference to the trial court's determination that peremptory challenges were free of discriminatory intent, and we will not overturn the determination unless it was clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation of a peremptory challenge should be believed; the best evidence often will be the demeanor of the prosecutor who exercises the challenge. …

> Within the *prima facie* case wherein a defendant must establish on the record the circumstances demonstrating purposeful discrimination, Pennsylvania law also requires that a defendant must make a record specifically identifying (1) the race or gender of all venirepersons in the jury pools, (2) the race or gender of all venirepersons remaining after challenges for cause, (3) the race or gender of those removed by the prosecutor, and (4) the race or gender of the jurors who served and the race or gender or jurors acceptable to the Commonwealth who were stricken by the defense. …

> In the second-step ***Batson*** analysis, we determine whether the Commonwealth gave a race-neutral explanation for its challenge. This inquiry does not demand an explanation that is persuasive, or even plausible. Instead, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

***Murray***, 248 A.3d at 567-68 (some citations omitted).

Here, during jury selection, the Commonwealth moved to strike Juror No. 139. N.T., 4/4/19, at 79. Defense counsel objected, arguing that nothing "of record would allow us to understand on what basis the Commonwealth had moved to strike this juror absent the color of her skin." *Id.* at 80. The Commonwealth responded, "It did not have anything to do with her race." *Id.* The Commonwealth stated it struck Juror No. 139 because the juror "had not answered a question posed to the group truthfully." *Id.* at 81.

The trial court explained:

The Appellant in these cases is an African American man. During jury selection, the Commonwealth struck an African American juror from the jury panel. The following series of exchanges occurred at jury selection between the [court, the Commonwealth, and defense counsel:]

[DEFENSE COUNSEL]: May we approach?

[THE COURT]: [Defense counsel], what is your objection?

[DEFENSE COUNSEL]: Your Honor, the only juror of color in the panel has been stricken. This was a juror that hasn't responded in any traditional way that we would –

[THE COURT]: What juror is that?

[DEFENSE COUNSEL]: Juror 139. And there isn't anything of record that would allow us to understand on what basis the Commonwealth had moved to strike the juror absent the color of her skin.

[COMMONWEALTH]: Your Honor, I am familiar with the case of ***Batson v. Kentucky***. I am trying not to take any personal offense from the challenge.

[DEFENSE COUNSEL]: None is meant.

[COMMONWEALTH]: I understand it is [defense counsel's] job. The question she answered about people not committing any crimes or a person close to her being charged with a crime, she did not answer that question when it was posed to the entire *voir dire*. She indicates an affirmative to that in her questionnaire.

[THE COURT]: Where at?

[COMMONWEALTH]: Question number three, have you or anyone close to you ever been charged with or arrested for a crime other than a traffic citation? She answered yes in her questionnaire but when you posed that to the group, she did not answer.

[THE COURT]: Was that the basis for your strike?

[COMMONWEALTH]: That is the basis for me striking her. It did not have anything to do with her race.

[THE COURT]: Let me look and see how she answered the other questions here. Any other questions similarly where she answered one way but didn't answer here?

[COMMONWEALTH]: No, Your Honor. In terms of the reason that I chose to strike her, she was on the panel and she had not – she was within the first twelve and she had not answered a question posed to the group truthfully.

[THE COURT]: [Defense counsel], what is your response to that?

[DEFENSE COUNSEL]: It occurs to me that while if you give me a few minutes, I can go through the list, we had other jurors similarly situated who did not respond affirmatively to the spoken questions.

[THE COURT]: Can you give me some examples of that?

- 7 -

[DEFENSE COUNSEL]: I can give you the one, that's the gentleman No. 66. I actually asked to call him down here because of the fact that he had not responded verbally to a question that he had answered.

[THE COURT]: He has explained that.

[DEFENSE COUNSEL]: That's true, but you asked me to give you an example. That's one.

[THE COURT]: I am going to deny your motion.

Transcript of Jury Selection, 4/4/19, [at] 79-81[.]

***

Similar to the case in **Batson**, the Appellant here made a timely objection to the Commonwealth's strike of a juror of color. However, in the case at hand, in contrast to **Batson**, the trial court heard the objection made by [defense counsel], required the [Commonwealth] to give an explanation for his action, and allowed [defense counsel] to give an example of a similar situation of a juror answering questions inconsistently.[3] Ultimately, the [c]ourt relied on its experience in supervising *voir dire* and found that the Commonwealth did not commit purposeful discrimination, as the Commonwealth came forward with a neutral explanation for the action it took.

Trial Court Opinion, 1/21/20, at 2-7 (footnote added).

Our review of the jury selection transcript and pertinent law comports with the trial court's conclusion that the Commonwealth provided a facially valid, race-neutral explanation, and in viewing the totality of the circumstances, Appellant failed to prove the Commonwealth committed

---

[3] Juror No. 66 was called to sidebar and questioned about his inconsistent answers to *voir dire*. **See** N.T., 4/4/19, at 74-77. Defense counsel ultimately struck Juror No. 66 from the jury. Trial Court Opinion, 1/21/20, at 6 n. 1.

"purposeful discrimination." Trial Court Opinion, 1/21/20, at 7; **see also Murray**, 248 A.3d at 567-68. Appellant's first issue does not merit relief.

Appellant next argues that the trial court "erred in not finding that the Commonwealth committed prosecutorial misconduct in exercising its peremptory challenges during jury selection." Appellant's Brief at 8. Both the trial court and Commonwealth contend Appellant failed to preserve this issue. **See** Trial Court Opinion, 1/21/20, at 8 ("This [c]ourt finds [Appellant] waived this issue at the time of jury selection by failing to expressly state that his reason for objecting was due to prosecutorial misconduct."); Commonwealth Brief at 13 (Appellant "has waived a prosecutorial misconduct claim."). We agree.

Issues not preserved in the trial court cannot be raised on appeal. Pa.R.A.P. 302(a). To preserve an objection, a party must raise the objection and state a specific ground when it is raised. **Commonwealth v. Duffy**, 832 A.2d 1132, 1136 (Pa. Super. 2003); Pa.R.E. 103(a)(1). The failure to state a specific legal theory in support of an objection results in waiver of the theory and the overall objection itself. **Commonwealth v. Lopez**, 57 A.3d 74, 81–82 (Pa. Super. 2012); Pa.R.E. 103(a)(1). Also, having articulated one or more bases for an objection, a party waives all non-stated bases. **Lopez**, 57 A.3d at 82. An appellant cannot raise on appeal a legal theory in support of an objection or other issue if the theory is different from the theory advanced at trial. **Duffy**, 832 A.2d at 1136. It is an appellant's duty to demonstrate where

and how an issue and its supporting theory were preserved. ***Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa. Super. 2008); Pa.R.A.P. 2117(c), 2119(e).

During jury selection, Appellant objected to the Commonwealth's striking of Juror No. 139. N.T., 4/4/19, at 79-80. Appellant "raised this objection pursuant to ***Batson v. Kentucky***, 476 U.S. 79 (1986)." Appellant's Brief at 10. However, Appellant did not make a prosecutorial misconduct objection, N.T., 4/4/19, at 79-81, nor has Appellant indicated that he "preserved such a theory of relief." ***See*** Appellant's Brief at 13-14; ***Rush***, 959 A.2d at 949. Thus, we agree Appellant's second issue is waived.

As Appellant's third and fourth issues challenge the trial court's admission of evidence, we address them together.

> It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. . . . When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Saez***, 225 A.3d 169, 177-78 (Pa. Super. 2019) (citations omitted). Where the trial court indicates "the reason for its decision, our scope

of review is limited to an examination of the stated reason." ***Commonwealth v. Stephens***, 74 A.3d 1034, 1037 (Pa. Super. 2013) (citation omitted).

Appellant asserts the trial court "erred in admitting telephone calls between the Appellant and his sister, Sabrina Culmer, in which he allegedly told his sister that he was looking to send the [V]ictim away during his jury trial and provided the dates of the jury trial to his sister during the recorded conversation." Appellant's Brief at 8. Appellant states:

> In the call, the Appellant also referred to an individual named "Freak" who could "push up on the [V]ictim" to prevent her from testifying at trial. The Appellant vigorously submits that the introduction of said recordings had no probative value, and painted him in a negative light in the eyes of the [j]ury.

***Id.*** (emphasis omitted).

Appellant also claims the trial court "erred in admitting Detective Fox's characterization of a mentioned individual: Tyrone Smith (AKA: "Freak") as a known narcotics trafficker." Appellant's Brief at 9. Appellant argues "this testimony was highly prejudicial to the Appellant, and [had] no relevance to the charges for which the Appellant was accused; said testimony did nothing more than paint the Appellant in a negative light in the eyes of the [j]ury[.]" ***Id.***

Our Supreme Court has explained, "all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." ***Commonwealth v. Dillon***, 925 A.2d 131, 136 (Pa. 2007). An exception to this rule is that

"[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Evidence may be admissible for a purpose other than to show criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

"Evidence of prior bad acts may also be introduced to prove consciousness of guilt, *i.e.*, that the defendant was aware of his wrongdoing." **Commonwealth v. Ivy**, 146 A.3d 241, 251 (Pa. Super. 2016) (citation omitted). The Pennsylvania Supreme Court "has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.'" **Commonwealth v. Hairston**, 84 A.3d 657, 665 (Pa. 2014) (citations omitted).

Even where an exception to Rule 404(b)'s prohibition against evidence of prior bad acts applies, the evidence is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 (comment).

Instantly, the trial court explained:

> By way of background, while the Appellant was in jail, a telephone conversation between the Appellant and his sister, Sabrina Culmer, took place and was subject to monitoring and recording by the jail, as stated in the opening of all telephone calls made from the jail. This phone call took place on April 25, 2019,

and the Commonwealth moved *in limine* prior to trial to introduce this telephone conversation to the jury at the time of trial. The [c]ourt granted the Commonwealth's Motion in Limine and that telephone conversation was subsequently played for the jury at trial.

During the telephone conversation with Sabrina Culmer, the Appellant referenced an individual named "Freak" when Appellant mentioned his plan to his sister to organize a vacation for the [V]ictim during the time of trial. The Appellant stated during the conversation with his sister that "Freak" could "push back up on [] the [V]ictim" to prevent her from testifying at trial. **The [c]ourt found that the telephone calls supported the Appellant's consciousness of guilt. The Appellant refused the [c]ourt's offer to redact portions of the recorded telephone conversation to allow the jury to hear only the relevant portions of the call**.

At the time of trial, Appellant's counsel objected to the Commonwealth's witness's characterization of who law enforcement recognizes as "Freak," claiming that the characterization was prejudicial to the Appellant and was not relevant to the proceedings. The [c]ourt overruled Appellant's counsel's objection **because the [c]ourt found the identity of "Freak" to be relevant to the jury's understanding of the nature of the Appellant's plans and "routes" for what he wanted "Freak" to do to aid in the Appellant's plan to stop the [V]ictim from testifying at the time of trial**.

Trial Court Opinion, 1/21/20, at 9-10 (emphasis added).

The recorded telephone call between Appellant and his sister, in which Appellant indicated "he wanted to arrange a vacation for" the Victim with assistance from "Freak," was probative to show Appellant's consciousness of guilt. N.T., 5/20/19, at 178; *see also Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007) ("This Court has long recognized that any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt.") (citations omitted); *see also*

- 13 -

***Commonwealth v. Hughes***, 865 A.2d 761, 792 (Pa. 2004) (defendant's conduct following a crime is admissible as tending to show guilt). In addition, Detective Fox's testimony that "Freak" was known to law enforcement as "Tyrone Smith, a narcotics trafficker," was relevant to show that Mr. Smith was not "a travel agent who would be taking [the Victim] on a legitimate vacation." N.T., 5/20/19, at 179-80; ***see also Hairston***, 84 A.3d at 665.

Prior to trial, the court ordered the Commonwealth to redact portions of the phone call to limit prejudice to Appellant. ***See*** Order, 5/15/19. However, at trial, before the call was played for the jury, defense counsel requested the entire call be played, stating: "I have discussed this with [Appellant]. I understand that I could limit the call, but the problem is, then all the jury gets is a lopsided view of what was taking place." N.T., 5/20/19, at 177. Given defense counsel's request, the court admitted the call without redaction. ***Id.***

Upon review, we conclude the trial court did not abuse its discretion in admitting the evidence for its probative value, where the court was aware of and attempted to minimize the likelihood that the evidence "inflamed the jury or caused it to convict Appellant on an improper basis." ***Hairston***, 84 A.3d at 666; ***see also Commonwealth v. Gad***, 190 A.3d 600, 605 (Pa. Super. 2018) ("Evidence will not be prohibited merely because it is harmful to the defendant.") (citation omitted). Accordingly, Appellant's evidentiary issues do not merit relief.

Judgment of sentence affirmed.

- 14 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2021